Keith BAILEY, Plaintiff,

v.

USX CORPORATION, Defendant.

Civ. A. No. 86–AR–1275–S.

United States District Court,
N.D. Alabama, S.D.

April 24, 1987.

Ernest Pugh, Birmingham, Ala., for plaintiff.

Peggy A. Werdehoff, Fairfield, Ala., for defendant.

Billy M. Tennant, Pittsburgh, Pa., pro hac vice.

## MEMORANDUM OPINION

ACKER, District Judge.

Keith Bailey complains that his former employer, USX Corporation, retaliated against him in violation of Title VII of the Civil Rights Act of 1964. Bailey alleges that the form the reprisal took was an adverse comment by a USX supervisor to Bailey's prospective employer after Bailey's termination. Bailey claims that this adverse comment was a reaction to Bailey's previous charge against USX of sex discrimination.

After trial the parties were given leave to file post-trial briefs on or before April 17, 1987. USX filed such a brief on April 17, 1987. Bailey filed his brief on April 23, 1987.

### Findings of Fact

On December 4, 1984, Bailey filed with the EEOC a charge claiming that USX had terminated him on account of his male sex and had replaced him with a female computer programmer having less service and experience. Bailey had been a USX "management associate". When USX cut back severely on its operations in Fairfield, Alabama, Bailey was temporarily assigned as a computer programmer with a USX department called "Regional Systems". Bailey's previous training had been in departments other than computers, and he had no real background or experience in computers. The minimum satisfactory score on USX's aptitude test for a computer programmer was "40". Bailey scored "36", but because USX had decided not to terminate its "management associates" during its initial, trial cut-back Bailey was loaned to Regional Services where he performed adequately as a programmer according to his formal evaluations. Bailey's immediate supervisor at Regional Services, Mr. Abston, evaluated Bailey higher than he would have evaluated Bailey if he had thought Bailey was a prospect for permanent employment in Regional Services. Mr. Abston understandably did not want to hurt Bailey's future elsewhere within USX by reporting Bailey's shortcomings on this job which was well understood to be temporary. Some "management associates" who had been temporarily assigned to Regional Services were later given permanent positions in USX management. The others were terminated in a final reduction in force at Fairfield. This included Bailey.

Mr. Abston testified that he had spoken to Bailey privately more than once about Bailey's poor job performance. At trial Bailey noticeably failed to deny that these criticisms of his performance had taken place. Mr. Abston had no reason personally to dislike Bailey. He did not dislike Bailey. In fact, Mr. Abston bent over backwards to give Bailey the benefit of the doubt.

Bailey was terminated by USX on August 29, 1984. He filed his sex discrimination charge with EEOC on December 4, 1984. On December 27, 1984, not long after Bailey's termination, but long before September 20, 1985, when he filed his sex discrimination complaint in this court in CV 85–P–2508–S, Bailey filed an employment application with the Jefferson County Personnel Board seeking employment as a computer programmer. As part of his application, Bailey signed an authorization which contained the following provision:

> In connection with my application for employment, I authorize and request any and all of my former employers and any other persons to furnish to the Jefferson County Personnel Board or any agent acting on its behalf, information they may have concerning my business activities, work record, credit worthiness, ability, character, personal characteristics, mode of living, and a general reputation; and I hereby release from any and all liability of whatsoever nature my former employers and any other persons supplying such information to the Jefferson County Personnel Board and its agents.

Bailey was thereupon certified on a list of "eligibles" by the Personnel Board for a programmer opening at the Jefferson County Department of Health. Mr. Watkins, who ran the data processing program at the Health Department, was in charge of making the hiring decision. Mr. Watkins had a personal, professional relationship with Mr. Abston. Mr. Watkins called Mr.

Abston by telephone about Bailey. Mr. Abston at first declined to comment on Bailey and tried to conform to USX's internal policy, which then required that all such inquiries be referred to USX's Personnel Department, but when pressed by Mr. Watkins, Mr. Abston told Mr. Watkins that he had found Bailey to be "unproductive". This was consistent with what Mr. Abston had told Bailey to his face. Bailey was not hired by the Health Department and was subsequently removed from the list of eligibles by the Personnel Board. Bailey then successfully won an appeal before the Personnel Board and was relisted as an eligible for programmer.

Mr. Watkins testified, based on his personel interview with Bailey, that he would not have hired Bailey, even without considering Mr. Abston's adverse comment. Mr. Bailey is now employed by the West Jefferson Correctional Facility after having completed Police Academy training, and has recently declined a job opportunity with the Personnel Board as a programmer.

On June 18, 1985, Bailey filed a second charge with EEOC against USX, this time claiming that the adverse reference given to Mr. Watkins by Mr. Abston was in reprisal for Bailey's pending sex discrimination charge. In his sex discrimination complaint filed in this court on September 20, 1985, CV 85–P–2508–S, in which Bailey was represented by the same attorney who represents him in the instant action, and as to which this court takes judicial notice, Bailey only complained of a discriminatory termination. If he or his attorney erroneously thought that he could not join his retaliation claim with his sex discrimination claim in CV 85–P–2508–S because on September 20, 1985, he did not have an EEOC "right-to-sue" on the retaliation claim, he does not explain why he did not demand such a "right-to-sue" on December 15, 1985, which was only two months after his suit was filed in CV 85–P–2508–S and 180 days after his retaliation claim was filed with EEOC. He did not demand a "right-to-sue" on his retaliation charge when he clearly could have done so. He finally obtained a "right-to-sue" from EEOC on May 30, 1986, a few days after his claim in CV 85–P–2508–S was actually tried by Honorable Sam C. Pointer, Jr., Chief Judge of this court, on May 8, 1986, without Bailey's having amended or sought to amend his complaint to add his then existing charge of retaliation. Bailey never brought to Judge Pointer's attention, nor attempted to bring to Judge Pointer's attention, any claim of retaliation. On May 8, 1986, Judge Pointer decided Bailey's sex discrimination claim in USX's favor, and Bailey took no appeal from the final judgment. Bailey then filed his complaint in the instant action on July 9, 1986.

### Conclusions of Law

USX has presented three defenses:

1. That Bailey formally and expressly waived any claim of retaliation against former employers, including USX, when he applied with the Jefferson County Personnel Board.

2. That Bailey is barred by *res judicata.*

3. That Bailey failed to prove by a preponderance of the evidence either that he was covered by Title VII's retaliation provisions when the alleged act of retaliation occurred, and, in the alternative, that Bailey has failed to prove that USX was guilty of retaliation.

The court will discuss these three defenses in order.

*Waiver:*

After oral comments by the court during trial, perhaps enhanced by what the Supreme Court said as recently as March 9, 1987, in *Town of Newton v. Rumery,* —— U.S. ——, 107 S.Ct. 1187, 94 L.Ed.2d 405, (1987), USX no longer insists on its defense of waiver. The public policy against contractual releases of future federal law violations is strong.

*Res Judicata:*

*Res judicata* is a universal rule pervading every well-regulated system of jurisprudence. It incorporates the interest of the public in the expeditious ending of litigation. The maxim appropriate to this concept is:

*Interest republicae ut sit finis litium.*

The doctrine also recognizes the hardship on an individual if he is vexed twice for the same cause. The pertinent maxim for this proposition is:

*Nemo debit bis vexari pro eadeam causa.*

*Res judicata* holds that a valid final judgment on the merits by a court of competent jurisdiction bars any future suit between the same parties or their privies on the same cause of action. This principle, where all other essential elements are present, expands to hold that a judgment operates not only as a bar to every matter actually adjudicated *but as to every other matter which might with propriety have been determined.* This concept has been recognized by the Supreme Court many times, including the following clear expression from *Grubb v. Public Utilities Commission of Ohio,* 281 U.S. 470, 50 S.Ct. 374, 74 L.Ed. 972 (1930):

> ... a judgment upon the merits in one suit is *res judicata* in another where the parties and subject matter are the same, not only as respects matters actually presented to sustain or defeat the right asserted, *but also as respects any other available matter which might have been presented to that end.*

281 U.S. at 479, 50 S.Ct. at 378 (emphasis supplied) (citations omitted).

This rule of issue preclusion has been held to foreclose the future litigation of issues which could have been litigated only by filing an amendment to a pleading. *Karas v. Karas,* 294 Mass. 230, 200 N.E. 922 (1936). Because Rule 15(a), F.R.Civ.P., provides that "leave [to amend] shall be freely given when justice so requires", there is absolutely no reason to think that Judge Pointer would not have allowed Bailey to amend his Title VII complaint in CV 85–P–2508–S to include a claim of retaliation arising out of the termination he was complaining about, particularly when *Gupta v. East Texas State University,* 654 F.2d 411 (5th Cir.1981), and *Turner v. Orr,* 804 F.2d 1223 (11th Cir.1986), clearly place the Eleventh Circuit among the very few courts which hold that a plaintiff need not have a "right-to-sue" in order to add a claim of retaliation to his pending claim of discrimination. The facts upon which Bailey bases his claim of retaliation were clearly known to him prior to the filing of his complaint in CV 85–P–2508–S. To have remained silent prior to and at the pre-trial conference and at trial itself is impossible to explain except that Bailey had in mind getting a "second shot" at USX. To avoid such a strategy is the very reason for *res judicata.*

■ The public policy represented by *res judicata* is one which demands of a litigant that he present in one suit all of the claims which have a common nexus. A plaintiff cannot file piecemeal complaints. Bailey's retaliation claim grew out of his sex discrimination claim. They are closely interrelated. *Res judicata* is a principle both of judicial economy and of common sense. If there is an exception to the doctrine of *res judicata* in Title VII cases in a *Gupta* situation, this court has not found it and cannot conceive of it. Bailey has not cited a case which permits him to escape the obligation to have presented in CV 85–P–2508–S all of the claims *which he clearly could have brought in that case. Gupta* plainly holds that he could have added his claim of retaliation without even filing with EEOC, much less without awaiting a "right-to-sue".

This case may be the first in which the *Gupta* reasoning evokes a *res judicata* analysis. Realizing that he could have shortcircuited EEOC consideration of his retaliation claim under *Gupta* and could have amended in CV 85–P–2508–S, Bailey nevertheless argues that he had a right to await EEOC consideration of his retaliation claim in the hope of successful conciliation. This argument might have merit if EEOC could realistically have been expected to grant any relief. The fact that Bailey did eventually obtain his "right-to-sue" indicates Bailey's certain knowledge that EEOC was no more than a way station to the courthouse. Bailey had his mind on piecemeal litigation. This court does not see any Title VII philosophy, much less statutory language, which would grant Bailey an exception to the rule of *res judi-*

*cata.* USX has met its burden of proof by a preponderance of the evidence that Bailey is barred by not having brought this claim as part of CV 85–P–2508–S.

*Retaliation:*

A question to be addressed before getting to the "merits" of the retaliation claim is whether or not Bailey, as a *former* employee of USX, has any standing to complain of retaliation.

Bailey invokes § 2000e–3(a), which provides:

> It shall be an unlawful employment practice for *an employer* to discriminate against any of *his employees or applicants for employment,* for an *employment agency, or joint labor-management committee* controlling apprenticeship or other training or retraining, including on-the-job training programs, to discriminate against *any individual, or for a labor organization* to discriminate against *any member* thereof *or applicant for membership,* because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

42 U.S.C. § 2000e–3(a) (emphasis supplied).

Section 2000e(f) defines "employee" as follows:

> The term "employee" means *an individual employed by an employer,* except that the term "employee" shall not include any person elected to public office in any State or political subdivision of any State by the qualified voters thereof, or any person chosen by such officer to be on such officer's personal staff, or an appointee on the policy making level or an immediate adviser with respect to the exercise of the constitutional or legal powers of the office. The exemption set forth in the preceding sentence shall not include employees subject to the civil service laws of a State government, governmental agency or political subdivision.

42 U.S.C. § 2000e(f) (emphasis supplied).

The phrase "applicants for employment" is not defined. If §§ 2000e–3(a) and 2000e(f) are read by their plain language, an employer may not retaliate either against his "employees" or "applicants for employment" but can retaliate against anybody else in the world, including his *former* employees. The definition of "employee" clearly contemplates a present, existing relationship between "employer" and "employee". There is nothing vague or inadequate in the statutory language. Employment agencies and joint labor-management committees, entities separate from employers, are prohibited from discriminating against *"any individual"*, while labor organizations are prohibited from discriminating against *"any member thereof or applicant for membership."* Obviously the Congress knew how to broaden or to narrow the coverage of its prohibitions. It conspicuously did not use the phrase "any individual" in circumscribing the possible retaliatory acts of an *employer.* The words "individual employed by an employer" are in the present tense. The express exemptions in § 2000e(f) do not include "former employees". In fact, when the draftsmen said that the "exemption set forth in the preceding sentence shall not include employees subject to the civil service laws", it is very difficult to conceive of *former* employees being subject to the civil service laws.

■ The congressional decision not expressly to prohibit former employers from discriminating against their former employees, while using alternative language for the prohibitions applied to other organizations limited by the statute, evidences a congressional intent to distinguish between treatments, and manifests congressional knowledge of how to effectuate that intent to distinguish. There are cases galore standing for the well established principle of statutory construction that absent unusual circumstances a court is bound by the plain language of a statute and that the words used in the statute, unless otherwise defined, are interpreted by using their ordinary, contemporary, common meaning. *Consumer Product Safety Commission v. GTE Sylvania, Inc.,* 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980);

*Perrin v. United States*, 444 U.S. 37, 42, 100 S.Ct. 311, 314, 62 L.Ed.2d 199 (1979). This principle alone fully supports USX's argument that § 2000e–3(a) does not apply to former employees and thus that former employees cannot maintain an action against their former employers under § 2000e–3(a) for alleged acts occurring after the employment relationship no longer exists, because the Congress in its wisdom did not so provide.

An additional rule of statutory construction here applicable is the rule which binds courts to express definitions of words and phrases set forth in a statute itself. *Walker v. Harris*, 335 F.2d 185 (5th Cir.) *cert. denied* 379 U.S. 930, 85 S.Ct. 326, 13 L.Ed.2d 342 (1964). If the Congress went to the trouble to *define* an "employee" in terms indicating the necessity of a current relationship with his "employer", the courts have little or no business making up their own expanded definition of "employee" to accommodate some perceived salutary purpose.

Two other helpful maxims, which here may overlap, are *"noscitur a sociis"* and *"expressio unius est exclusio alterius"*. While this court has no doubt about the grammatical meaning of the word "employee" in the sentence where it is used in § 2000e–3(a), its meaning becomes even clearer when the statute is construed in its entirety, and when the word "employee" is compared and contrasted with other words in other sentences in the statute. *United States v. Alpers*, 338 U.S. 680, 70 S.Ct. 352, 94 L.Ed. 457 (1950); *Turner v. LaBelle*, 251 F.Supp. 443 (D.Conn.1966). When the Congress used the word "employee", the Congress necessarily meant to exclude "non-employee", particularly when there are non-employees who are covered in other parts of the same statute.

The Tenth Circuit in *Rutherford v. American Bank of Commerce*, 565 F.2d 1162 (10th Cir.1977), and the Second Circuit in *Pantchenko v. C.B. Dolge Company, Inc.*, 581 F.2d 1052 (2d Cir.1978), applied the reasoning and analysis used by the Sixth Circuit in *Dunlop v. Carriage Carpet Company*, 548 F.2d 139 (6th Cir.1977), which dealt with the Fair Labor Standards Act, and concluded, contrary to this court's reasoning, that the term "employee", as used in 42 U.S.C. § 2000e–3(a) includes "former employees". *Rutherford* and *Pantchenko* both hold that the term "employee" as used in § 2000e–3(a) includes "former employee". They argue that to conclude otherwise would conflict with the purpose and policy of Title VII by allowing employers to retaliate against former employees with impunity. These two courts reason that what they call a narrow interpretation of the statute is not justified by its legislative history, and the Second Circuit in *Pantchenko* rejects the argument that the Congress by using the various terms "employee", "applicants for employment", "any individual", "any member", or "applicant for membership" intended to narrow the application of the statute. This court respectfully disagrees with the rationales of the Second and Tenth Circuits. Instead, this court is willing to assume that the Congress has reasonable intelligence, and has some ability to use the English language, and would have included "former employees" in the coverage of the Act if it had intended to do so. This court is unwilling to condescend toward the Congress and to read with superior knowledge the legislative mind without considering the words actually employed by the legislators. This court does not presume to know better than the Congress itself knows what is best in order to cure the ills of humanity.

In his untimely brief Bailey relies upon *Coltrane v. Georgia Department of Offender Rehabilitation*, 23 FEP 1421 (N.D. Ga.1980), for the proposition that § 2000e–3(a) should be liberally construed to include former employees. Honorable G. Ernest Tidwell gratuitously adopted the reasoning of *Rutherford* and *Pantchenko* in an expression unnecessary to this holding in *Coltrane*. This court just as respectfully disagrees with Judge Tidwell as it does with the holdings of the Second and Tenth Circuits. This court finds much more persuasive the following very recent expression by the Eleventh Circuit:

> ... when faced with a question of statutory interpretation, our starting point

must be the language of the statute; we must assume that Congress intended the ordinary meaning of the words it used; and absent a clearly expressed legislative intent to the contrary, that language generally is dispositive.

*Gulf Life Ins. Co. v. Arnold,* 809 F.2d 1520, 1522 (11th Cir.1987) (citations omitted)

In the Fair Labor Standards Act the word "employee" is defined as "any individual employed by an employer", and the word "employ" is defined as "to suffer or permit to work". 29 U.S.C. §§ 203(e)(1), 203(g). It is difficult to conceive of an employee not being employed, that is, being permitted to work. Even though the FLSA was designed to provide the broadest prohibition of sub-minimum wages, the Act has not been judicially expanded to protect everybody who has conceivably received any compensation whatsoever from another for work performed. In *Donovan v. American Airlines, Inc.,* 686 F.2d 267 (5th Cir., 1982), "trainees", even though they performed work and were paid by American Airlines while training as flight attendants, were not "employees". Why? Because the actual words of the statute, according to the Fifth Circuit, controlled and not its overall purpose. If the Fifth Circuit had been overcome with a desire to read the word "employee" liberally in order to accomplish the purposes of the FLSA, this would have been the perfect case in which to do it.

A revealing comment is found in *Dubrick v. Firestone Tire & Rubber Co. of California,* 355 F.Supp. 138 (E.D.N.Y. 1973), in which a district court in New York was primarily concerned with a venue question arising from the fact that the plaintiff had allegedly been the subject of racial discrimination in California and had sued there, but later moved to New York where he was the alleged victim of retaliation by his former California employer. The opinion may cut two ways, both for Bailey and for USX. It holds:

> None of the foregoing asserted facts appears in or can fairly be inferred from the allegations of plaintiff's complaint, which is properly limited to the charges investigated by EEOC. But even assuming *arguendo* the truth of such facts, they cannot be considered "a continuing unlawful practice" by Firestone under the Act. Section 2000e-3(a) plainly expresses the purpose and intent of Congress to proscribe discrimination by employers against "employees" or "applicants for employment" on grounds of race or color or because they have "opposed" or exercised lawful procedural rights against such practices. The remedial purposes of the Act will be fully served by adjudication of the issues tendered by the present complaint, which adequately sets forth the statutory gravamen of the action as embraced in the charges plaintiff filed with EEOC. He will be "entitled to judicial review of all grounds of employment discrimination alleged in his complaint to the EEOC ..." *Green v. McDonnell Douglas Corp.,* 463 F.2d 337, 342 (8 Cir.1972). *His affidavit assertions of post-employment misconduct by Firestone, if proven, may possibly be relevant to the issue of damages arising from delay in procuring new employment should plaintiff succeed on his statutory claim; they are not additional causes of action under the Act which create venue in this district.*

355 F.Supp. at 140, 141 (emphasis supplied).

If the district court was implying that a *former* employee has a right to complain of retaliation under § 2000e-3(a), it was also saying that the post-employment conduct must be complained of *within the basic discrimination complaint if at all possible.* Again, Dubrick implicates the rationale behind the doctrine of *res judicata.*

There are no decisions by the Supreme Court, by the Eleventh Circuit, or by the old Fifth Circuit interpreting the term "employee" as used in § 2000e-3(a) in a situation such as this. If the Eleventh Circuit or the Supreme Court decides to agree with the reasoning of the Second and Tenth Circuits, that is, of course, be their prerogative. With what this court now has before it, this court cannot agree.

Assuming *arguendo* that the Eleventh Circuit would hold that a "former employee" is an "employee" for the purposes of § 2000e–3(a), the most important remaining question, and one which would render the previous discussions academic in light of this court's answer to it, is whether or not USX intentionally retaliated against Bailey. In Schlei & Grossman, *Employment Discrimination Law* (2d ed.), in their chapter entitled "Reprisal and Retaliation", under the subdivision entitled "Establishing the Causal Connection", the authors state:

> Evidence that discriminatory intent played any part in the employment decision at issue may be proven by direct or circumstantial evidence.

The use of the words "employment decision" implies a belief by Schlei and Grossman that the retaliatory conduct must adversely affect a *current employee,* as contrasted with someone necessarily outside the scope or the effect of an *"employment decision"*. Mr. Abston was surely not making an *"employment decision"* when he commented on Bailey. But that subject has already been explored. Now the court must decide the ultimate fact: Has Bailey met his burden of proving an impermissible *motive* for Mr. Abston's adverse comment *and a causal connection to some injury?*

■ There is no *direct* evidence of an intentional reprisal by Mr. Abston. There is no credible *circumstantial* evidence that Mr. Abston had any intent whatsoever to retaliate against Bailey and, in effect, to punish him for having filed his sex discrimination charge. Mr. Abston did not fire Mr. Bailey. Mr. Abston did not initiate the contact with Mr. Watkins. It was Mr. Watkins who called Mr. Abston. Mr. Abston never even mentioned Bailey's sex discrimination claim to Mr. Watkins. For a former employer to give a frank, honest and fact-based opinion to a prospective employer, at the request of the prospective employer, certainly does not constitute a *prima facie* violation of § 2000e–3(a). Reprisal played no part whatsoever in Mr. Abston's reluctant comment to Mr. Watkins. Mr. Abston surely had a right to his own personal opinion of Bailey's job performance. Surely he had a right to express his opinion

under the First Amendment, that is, unless his expressing it was somehow motivated by a retaliatory impulse occasioned by Bailey's pending Title VII claim. The question of whether or not a *true* statement, even if made with a motive of retaliation, is actionable under § 2000e–3(a), need not be addressed here. Why? Because there was no retaliatory motive here. With neither a *prima facie* case nor substantial evidence to sustain the ultimate burden of persuasion, it becomes unnecessary to indulge the analysis described in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).

Bailey cites *Coltrane v. Georgia Department of Offender Rehabilitation,* 23 FEP 1421 (N.D.Ga.1980), not only for the proposition that § 2000e–3(a) should be construed to protect former employees but that § 2000e–3(a) absolutely prevents the former employer from telling a prospective employer about the former employee's Title VII claim. If this is a correct statement of the law, it has no applicability here, because there is no evidence that Mr. Abston even mentioned Bailey's sex discrimination charge to Mr. Watkins.

■ Lastly, the court believes Mr. Watkins' testimony that he would not have hired Bailey even if he had never heard the comment by Mr. Abston. Mr. Watkins was not impressed with Bailey in their personal interview. Based on this finding, the *Mt. Healthy* defense is available to USX and is due to be applied here. *Mt. Healthy City School District v. Doyle,* 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977), holds that an impermissibly motivated employment decision does not form a viable basis for relief *if* the same adverse employment decision would have been made without reference to the impermissible motivation. There is admittedly a distinguishing feature in this case in that the adverse decision maker was a *prospective* employer and not the actual employer (or *former* employer). Nevertheless, the *Mt. Healthy* rationale should logically apply. Bailey simply was not hurt by Mr. Abston's remark, whether impermissibly motivated or not. If *Mt. Healthy* is limited to adverse

decisions by the actual employer (or *former* employer), Mr. Abston would have given his honest evaluation to Mr. Watkins anyway, without regard to any impermissible motive. If anything, Mr. Abston may have been softer in his comment about Bailey in view of Bailey's pending Title VII charge than he otherwise would have been. Under either rationale *Mt. Healthy* is the last insurmountable obstacle for Bailey.

## Conclusion

For the foregoing separate and several reasons, a judgment will be entered in favor of USX.