**Keith D. BAILEY, Plaintiff–Appellant,**

v.

**USX CORPORATION, Defendant–Appellee.**

No. 87–7356.

United States Court of Appeals, Eleventh Circuit.

Aug. 2, 1988.

Ernest Pugh, Birmingham, Ala., for plaintiff-appellant.

Maria B. Valdez, Washington, D.C., amicus curiae.

Billy M. Tennant, USX Corp., Elizabeth L. Peters, Pittsburgh, Pa., for defendant-appellee.

Before RONEY, Chief Judge, CLARK, Circuit Judge, and MORGAN, Senior Circuit Judge.

RONEY, Chief Judge:

After a number of years of service, Keith D. Bailey, a white male, was terminated by USX Corporation on August 29, 1984. Bailey's termination was ostensibly the result of a general reduction in workforce at the local USX plant, but Bailey filed a suit under Title VII, alleging that his termination was caused by "reverse" sex discrimination. A decision against Bailey in that suit was not appealed and that charge is not before us. During the pendency of that action, however, Bailey sought other employment and received an unfavorable reference from an official at USX. Bailey responded by filing the instant case, alleging that USX had retaliated against him, in violation of section 704(a) of Title VII, 42 U.S.C.A. § 2000e–3(a). After trial, the district court entered judgment for defendant USX, on three alternative grounds: the merits, *res judicata,* and lack of standing. *Bailey v. USX, Corp.,* 658 F.Supp. 279 (N.D.Ala.1987). Although lack of standing would not justify a decision against Bailey, the district court was not clearly erroneous in finding against him on the merits, so we affirm the judgment for USX. We need not reach the *res judicata* defense.

The facts in this case are largely undisputed. Bailey worked at the USX plant in Fairfield, Alabama from July 1978 until August 1984. Bailey started as a laborer, was promoted to various management trainee positions, and was ultimately transferred to a temporary position as a computer programmer in USX Regional Systems. Bailey had no background in computer programming and scored below the minimum acceptable score on the USX computer programmer aptitude test, but was transferred to the job because USX decided not to terminate its management trainees during its initial operational cutbacks at Fairfield.

Bailey's supervisor at Regional Systems was Sam Abston, and Abston rated Bailey's performance as "Good" under a system which ranked employees as "Outstanding," "Very good," "Good," "Marginal," and "Failing." Abston testified that he was dissatisfied with Bailey's performance

and discussed this with Bailey on several occasions, but that generally he and Bailey worked well together.

Bailey attempted to secure a position in a different department of USX, but was not successful. After being informed that there were no permanent positions available to him, Bailey was terminated from Regional Systems. When Bailey learned that a female employee had been transferred from USX Auditing to a permanent position with Regional Systems, Bailey filed sex discrimination charges with the EEOC in December 1984, received a right-to-sue letter, and filed a complaint against USX in September 1985. The case was tried on May 8, 1986, and at the close of plaintiff's case, the judge granted USX's motion to dismiss pursuant to Fed.R.Civ.P. 41(b). No appeal was taken.

### The Merits

While Bailey's discrimination charge was pending, he sought other employment. As a result of communications between Bailey's former supervisor, Sam Abston, and a prospective employer, Harry Watkins, Bailey perceived that he was being retaliated against for having filed his sex discrimination suit. He filed this charge with the EEOC, received a right-to-sue letter, and brought this suit, which was tried before the court without a jury. As to the merits issue on appeal, we must determine if the record supports the district court's decision that Bailey failed to prove a *prima facie* case.

In February 1985, Bailey was placed on the Jefferson County Alabama Civil Service list as a qualified computer programmer. In April 1985, Bailey was interviewed by Harry Watkins, supervisor of the Jefferson County Health Department. While Bailey had listed Dennis Funchess and not Sam Abston as his USX reference, Watkins asked Bailey about his feelings toward Abston. Apparently, Watkins had a prior professional relationship with Abston because they both used the same computer systems and occasionally exchanged information.

Watkins contacted Abston by telephone to inquire why Bailey had been discharged from USX. According to Watkins, Abston first tried to refer him to USX Personnel Department, but when pressed by Watkins, finally commented that he thought Bailey was "unproductive" and would not be re-hired by USX. Watkins relayed this information to the Jefferson County Personnel Department, which removed Bailey's name from the Civil Service list. Bailey sought and won reinstatement to the list, and was later offered a position as a programmer, which he declined because he had obtained other employment.

■ The court filed findings of fact and conclusions of law which concluded that Bailey had not established a *prima facie* case of retaliation because he had proved neither an impermissible motive for Abston's negative reference nor a causal connection to some injury. This conclusion is well supported by the record. Abston did not fire Bailey and Abston testified that he was not consulted in connection with the decision to terminate Bailey. Abston testified that he harbored no personal dislike for Bailey and thought that he and his wife were "nice people." Abston testified that no one at USX criticized him or held him responsible for Bailey's actions in filing a sex discrimination suit. Abston described his reaction to the suit by stating that he "was just befuddled that such a charge was made," and later "kind of appalled at all the work I had to do to dig up history."

This evidence indicates that Abston did not initiate the conversation with Watkins, did not readily give Watkins an opinion on Bailey and never told Watkins that Bailey had filed a sex discrimination suit against USX. Abston's comment that Bailey was unproductive, while negative, was precisely what he told Bailey while he was Bailey's supervisor. Abston's actions do not appear to be those of an employer bent on retaliation.

The record also supports the district court's finding that Watkins would not have hired Bailey even if the negative reference had not been given. Watkins testified that his interview with Bailey did not go well and that Bailey struck him as "arrogant." While Bailey was removed from

the Civil Service list apparently because of the negative reference, Bailey immediately sought and was granted reinstatement to the list, so the harm caused by the negative reference was minimal. The evidence in this case does not support Bailey's charge that he was a victim of retaliation. The judgment for the defendant on the merits of claim is due to be affirmed.

## Standing

As an alternative ground of decision, the district court concluded that Bailey lacked standing to sue under Title VII because he was a *former* employee, not an employee at the time of the alleged discriminatory acts. While the district court noted the resolution of this issue could be considered "academic" in light of the merits disposition, *Bailey v. USX, Corp.*, 658 F.Supp. 279, 286 (N.D.Ala.1987), it is appropriate that we set forth our disagreement with the conclusion reached by the district court in order to clarify the law in this Circuit.

The district court held that "[i]f §§ 2000e–3(a) and 2000e(f) are read by their plain language, an employer may not retaliate either against his 'employees' or 'applicants for employment' but can retaliate against anybody else in the world, including his *former* employees." *Bailey*, 658 F.Supp. at 283. The court noted that both the Tenth Circuit in *Rutherford v. American Bank of Commerce*, 565 F.2d 1162 (10th Cir.1977) and the Second Circuit in *Pantchenko v. C.B. Dolge Co.*, 581 F.2d 1052 (2d Cir.1978), have held that former employees could sue for retaliation under Title VII, and that these decisions were based on broad policy arguments, as well as legislative history. The court disagreed with the rationale employed in these decisions and stated that it was "unwilling to ... read with superior knowledge the legislative mind without considering the words actually employed by the legislators." *Bailey*, 658 F.Supp. at 284.

Every other court that we have found to have addressed this issue has held that former employees have standing to sue, contrary to the district court here. *Pantchenko v. C.B. Dolge Company, Inc.*,

581 F.2d 1052 (2d Cir.1978); *Rutherford v. American Bank of Commerce*, 565 F.2d 1162 (10th Cir.1977); *Bahu v. Fuller O'Brien Paints*, 41 Fair Empl.Prac.Cas. (BNA) 1231 (N.D.Ind.1986) [available on WESTLAW, 1986 WL 12048]; *Atkinson v. Oliver T. Carr Co.*, 40 Fair Empl.Prac.Cas. (BNA) 1041 (D.D.C.1986) [available on WESTLAW, 1986 WL 6997]; *Bilka v. Pepe's, Inc.*, 601 F.Supp. 1254 (N.D.Ill. 1985); *Sparrow v. Piedmont Health Systems Agency, Inc.*, 593 F.Supp. 1107, 1119 (M.D.N.C.1984); *Helwig v. Suburban Chevrolet*, 33 Fair Empl.Prac.Cas. (BNA) 1261 (D.Md.1983) [available on WESTLAW, 1983 WL 539]; *Czarnowski v. Desoto, Inc.*, 518 F.Supp. 1252, 1257 (N.D.Ill.1981); *EEOC v. Virginia Carolina Veneer Corp.*, 495 F.Supp. 775, 777 n. 6 (N.D.Va.1980), *appeal dismissed*, 652 F.2d 380 (1981).

These cases have been variously reasoned but have turned generally on a common sense reading in keeping with the purpose of the statute. While it is true that the language of a statute should be interpreted according to its ordinary, contemporary and common meaning, *see Consumer Product Safety Commission v. GTE Sylvania, Inc.*, 447 U.S. 102, 108–09, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980), this plain-meaning rule should not be applied to produce a result which is actually inconsistent with the policies underlying the statute. In the instant case, a strict and narrow interpretation of the word "employee" to exclude former employees would undercut the obvious remedial purposes of Title VII. The same rationale has been applied in construing nearly identical anti-retaliation provisions in the Age Discrimination in Employment Act and in the Fair Labor Standards Act. *EEOC v. Cosmair, Inc.*, 821 F.2d 1085, 1088 (5th Cir.1987) (term "employee" as used in anti-retaliation provision of Age Discrimination in Employment Act, 29 U.S.C.A. § 623(d), encompasses former employees); *Dunlop v. Carriage Carpet Co.*, 548 F.2d 139, 147 (6th Cir.1977) (term "employee" in anti-retaliation provision of Fair Labor Standards Act, 29 U.S. C.A. § 215(a)(3), encompasses former employees). We join these courts and hold

that former employees may sue for retaliation under Title VII.

AFFIRMED.