**Brenda S. BOOTH, Plaintiff,**

v.

**QUANTUM CHEMICAL CORP. d/b/a Suburban Propane, Defendant.**

**Civil Action No. CV495–258.**

United States District Court, S.D. Georgia, Savannah Division.

Oct. 3, 1996.

1. The issue of *ante litem* notice need not be addressed.

Fletcher Farrington, Savannah, GA, for plaintiff.

Charles W. Brannon, Jr., of Kennedy, Lewis, Smart & Brannon, Savannah, GA, Allen Sherrod Willingham and Michael J. Hannan, III, of Love & Willingham, Atlanta, GA, for defendant.

## ORDER

MOORE, District Judge.

Defendant has filed a Motion for Summary Judgment on the basis of *res judicata* (Doc. 15). For the reasons stated below, this Court **GRANTS** the motion. Any and all outstanding motions are hereby rendered **MOOT.**

### I. *Background.*

Except where specifically indicated, the following facts are not contested.

Plaintiff worked for Defendant as a Regional Coordinator until November 1994 when she was terminated. On October 20, 1994, Plaintiff filed a complaint against Robert E. Lee in the State Court of Chatham County. Mr. Lee worked as a manager for Defendant. On November 23, 1994, Mr. Lee, a resident of North Carolina, properly removed the case to the United States District Court for the Southern District of Georgia where it was given the civil action number CV494-286 and assigned to Judge Anthony A. Alaimo. On April 10, 1995, Plaintiff amended the complaint to add Defendant to the action. The amended complaint alleged that Mr. Lee, as Plaintiff's superior, asked and authorized her to conduct an investigation for the company pertaining to employee thefts and other malfeasances. Plaintiff alleged that Defendant wrongfully terminated her employment in retaliation for her reporting violations of company policies discovered during her employment and the requested investigation. She also alleged fraud on the part of Mr. Lee and breach of implied contract on the part of both Mr. Lee and Defendant.

During this time, several events occurred. First, it must be mentioned that Plaintiff filed the complaint in state court *pro se.* On January 20, 1995, Plaintiff filed a complaint with the EEOC. On March 8, 1995, Attorney Fletcher Farrington entered an appearance on behalf of Plaintiff and on April 10, 1995, he filed the Amended Complaint in CV494-286. On June 30, 1995, the EEOC issued the right-to-sue letter to Plaintiff who then received it one or two days later. The original scheduling notice issued by the Clerk of Court set the amendment of pleadings deadline at January 29, 1995. Despite this deadline, Plaintiff moved for leave to file an amended complaint on March 17, 1995, which

Magistrate Judge James E. Graham granted on April 10, 1995. Discovery was originally set to expire on April 4, 1995, but Judge Alaimo extended it through July 15, 1995.

On September 25, 1995, Plaintiff, through her attorney, filed another claim against Defendant, this time in the Superior Court for Chatham County.[1] This lawsuit alleged that the termination of her employment amounted to a violation of Title VII of the Civil Rights Act of 1964. On October 27, 1995, Defendant removed the case to the United States District Court for the Southern District of Georgia, where it was given the civil action number CV495–258 and assigned to the undersigned judge.

Meanwhile, in the world of CV494–286, Judge Alaimo issued an order on January 24, 1996, granting the summary judgment motion of Defendant and Mr. Lee on all claims except the claim for expenses and *quantum meruit* recovery. On April 2, 1996, Defendant and Mr. Lee made an unconditional tender of $5,000 in full payment for the expenses and *quantum meruit* claims. At some point in May 1996, the parties submitted a consent order for Judge Alaimo to sign which would have granted Defendant and Mr. Lee's summary judgment motion on the basis of accord and satisfaction. Soon thereafter, Attorney Farrington must have become aware of the viability of Defendant's *res judicata* defense in CV495–258 as, on May 24, 1996, he filed a motion to stay CV494–286 or to consolidate it with CV495–258. On June 13, 1996, Judge Alaimo granted the consolidation and did not sign the consent order. CV494–286 and CV495–258 were consolidated and assigned to the undersigned judge.

When these cases came to this Court's attention, the Court was extremely curious as to their status. On July 25, 1996, the parties attended a pretrial conference with the Court at which counsel for Plaintiff responded that he could offer no reason why the consent order in CV494–286 should not be signed and that case severed from CV495–258 and closed. The next day, this Court severed CV494–286 from CV495–258, signed the consent order granting Defendant

and Mr. Lee's summary judgment motion, and closed CV494–286.

Currently before this Court is Defendant's Motion for Summary Judgment on the basis of *res judicata.* This Court now considers the motion.

## II. *Analysis.*

### A. *When Summary Judgment is Appropriate.*

The "purpose of summary judgment is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). The burden then shifts to the nonmovant to establish, by going beyond the pleadings, that there is a genuine issue as to facts material to the nonmovant's case. *Thompson v. Metropolitan Multi–List, Inc.,* 934 F.2d 1566, 1583 n. 16 (11th Cir.1991). A dispute of material fact "is 'genuine' ... if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, [then] there is no genuine issue for trial." *Matsushita,* 475 U.S. at 587, 106 S.Ct. at 1356.

In assessing whether the movant is entitled to summary judgment in its favor, the district court must review the evidence and reasonable factual inferences arising from it in the light most favorable to the nonmoving party. *Welch v. Celotex Corp.,* 951 F.2d 1235, 1237 (11th Cir.1992). This Court must

---

1. Mr. Lee was not named as a party-defendant in the second lawsuit.

avoid weighing conflicting evidence during this endeavor. *Anderson*, 477 U.S. at 255, 106 S.Ct. at 2513. Where a reasonable fact finder may "draw more than one inference from the facts, and that inference creates a genuine issue of material fact, then the court should refuse to grant summary judgment." *Barfield v. Brierton*, 883 F.2d 923, 933–34 (11th Cir.1989) (citation omitted). However, if the evidence is merely colorable or not significantly probative, summary judgment may be granted. *Id.*

### B. *Res Judicata Bars Plaintiff's Title VII Claim.*

Defendant asserts that the prior adjudication of the state law claims in CV494–286 constitutes *res judicata* as to the Title VII claim asserted by Plaintiff in this action. This Court agrees with Defendant and finds that Plaintiff is precluded from pursuing her claim in the instant case.

■ "[A] judgment upon the merits in one suit is *res judicata* in another where the parties and subject-matter are the same, not only as respects matters actually presented to sustain or defeat the right asserted, but also as respects any other available matter which might have been presented to that end." *Grubb v. Public Utils. Comm'n of Ohio*, 281 U.S. 470, 479, 50 S.Ct. 374, 378, 74 L.Ed. 972 (1930). The doctrine of *res judicata* actually incorporates two separate doctrines pertaining to the preclusive effect given to a prior judicial determination. *Kaspar Wire Works, Inc. v. Leco Eng'g & Mach., Inc.*, 575 F.2d 530, 535 (5th Cir.1978).[2] The first doctrine is " 'claim preclusion,' or true *res judicata*." *Id.* The second doctrine is that of issue preclusion. *Id.* This Court is not concerned with any issue preclusion application here. Claim preclusion "treats a judgment, once rendered, as the full measure of relief to be accorded between the parties on the same 'claim' or 'cause of action.' " *Id.* When a court enters a judgment for a defendant, the "effect of [the] judgment extends to

the litigation of all issues relevant to the same claim between the same parties, whether or not raised at trial." *Id.* The preclusive effect "extends not only to the precise legal theory presented in the previous litigation, but to all legal theories and claims arising out of the same 'operative nucleus of fact.' " *Olmstead v. Amoco Oil Co.*, 725 F.2d 627, 632 (11th Cir.1984) (citation omitted).

■ Under federal law, as well as the law of Georgia, *res judicata* will bar a subsequent judicial proceeding if the court finds that three essential requirements are met: (1) a court of competent jurisdiction rendered a prior decision; (2) the prior decision was a final judgment on the merits; and (3) the same cause of action and the same parties (or their privies) were involved in both cases.[3] *Nevada v. United States*, 463 U.S. 110, 129–30, 103 S.Ct. 2906, 2917–18, 77 L.Ed.2d 509 (1983); *Akin v. PAFEC, Ltd.*, 991 F.2d 1550, 1556 (11th Cir.1993).

■ Plaintiff asserts that the first and third requirements have not been satisfied and that, therefore, the defense of *res judicata* is inapplicable to this case. As Plaintiff's response pertains to the first requirement, this Court will summarily dispose of that contention because it is meritless. It is true that *res judicata* will not apply if the prior judgment was entered by a court without competent jurisdiction or if the requirements of due process were ignored. *Jones v. Texas Tech. Univ.*, 656 F.2d 1137, 1141 (5th Cir. Sept. 1981). At the time of the issuance of the prior decision, there was no dispute as to this Court's jurisdiction over the parties or claims contained in CV494–286. Plaintiff has brought no argument to light which would cause this Court to question the legitimacy of its jurisdiction over the matters in CV494–286 nor has Plaintiff questioned the procedure through which that earlier lawsuit was adjudicated. Indeed, Plaintiff consented to and joined in the final adjudication of that action.

---

2. The Eleventh Circuit adopted as binding precedent all of the decisions of the former Fifth Circuit handed down prior to October 1, 1981. *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981).

3. Both parties agree that the federal law of *res judicata* should be utilized in determining the propriety of Defendant's motion. (*See* Def.'s Rule 56.1 Concl. of Law, ¶ 1 and Pl.'s Resp. to Def.'s Rule 56.1 Concl. of Law, ¶ 1.)

Plaintiff's argument pertaining to the third requirement, however, requires closer scrutiny. Specifically, Plaintiff asserts that the Title VII claim in CV495–258 is a different claim (or cause of action) than the contract and other state law claims in CV494–286. Plaintiff premises this argument largely upon the fact that she could not proceed with the Title VII action until she received her right-to-sue letter. Again, she received this letter on the first or second day of July 1995 and filed the Title VII complaint in Superior Court on September 25, 1995. She argues that, because she could not have prosecuted her Title VII claim until receipt of the right-to-sue letter, the case law of *res judicata* that precludes any and all claims which *could have been brought* as a result of the operative nucleus of facts can not bar her claim.

 "In general, cases involve the same cause of action for purposes of *res judicata* if the present case 'arises out of the same nucleus of operative fact, or is based upon the same factual predicate, as a former action.'" *Israel Discount Bank Ltd. v. Entin*, 951 F.2d 311, 315 (11th Cir.1992) (quoting *Citibank, N.A. v. Data Lease Fin. Corp.*, 904 F.2d 1498, 1503 (11th Cir.1990)). In making this determination, the district court simply compares the factual issues explored in the first action with those pending in the second. *Id.* "Claims are part of the same cause of action when they arise out of the same transaction or series of transactions." *In re Justice Oaks II, Ltd.*, 898 F.2d 1544, 1551 (11th Cir.1990) (citing RESTATEMENT (SECOND) OF JUDGMENTS § 24 (1982)). The district court must look at the facts empirically rather than take a semantical view of the stated claims in order to determine whether the causes of action are the same. *I.A. Durbin, Inc. v. Jefferson Nat'l Bank*, 793 F.2d 1541, 1549 (11th Cir.1986).

 After reviewing the pleadings in both CV494–286 and CV495–258, this Court is satisfied that Plaintiff has presented two different legal claims which spring from the same set of facts: namely, the conditions of the termination of her employment. The

only question which faces this Court now is whether the fact that Plaintiff could not assert the Title VII claim in court until she received the right-to-sue letter from the EEOC exempts her from the preclusive effect of *res judicata.* This Court, and the parties, have undertaken extensive research into this matter and the Court finds that there is no on-point case from the Eleventh Circuit which answers this question. Sufficient case law from other circuits exists, however, for this Court to conclude that *res judicata* still applies in this case.

 To set the tone for the discussion below, this Court comments that the Supreme Court has made it resonantly clear that Title VII litigants are not immune from the *res judicata* doctrine nor are they entitled to a narrower application of that doctrine. *See Kremer v. Chemical Constr. Corp.*, 456 U.S. 461, 485, 102 S.Ct. 1883, 1899, 72 L.Ed.2d 262 (1982) (finding that Congress did not intend Title VII litigation to be exempt from effect of preclusive doctrines such as *res judicata* ). Given the fact that Title VII lawsuits are not entitled to any special treatment concerning preclusive doctrines, this Court now examines what it considers to be the most instructive case in this matter.

In *Woods v. Dunlop Tire Corp.*, the Second Circuit affirmed the district court's application of *res judicata* in a set of circumstances remarkably similar to those in this case. 972 F.2d 36 (2d Cir.1992).[4] After she was fired by her employer, the *Woods* plaintiff, a black female, filed charges with the EEOC on July 31, 1985, alleging that she was fired because of her race and/or her sex. *Id.* at 37. The EEOC charges were still pending when, on December 4, 1985, the plaintiff filed a complaint in the United States District Court for the Western District of New York, alleging that the employer violated the Labor Management Relations Act (hereinafter "LMRA"), 29 U.S.C. § 185, by terminating her employment in violations of the terms of the collective bargaining agreement her union had with the employer.

---

4. It is worth mentioning that Judge Paul H. Roney of the Eleventh Circuit sat by designation

in that case and joined in its opinion.

*Id.* On June 22, 1988, the district court granted the employer's motion for summary judgment and closed the case. *Id.*

On November 21, 1990, more than five years after the filing of the charges by the plaintiff, the EEOC issued the right-to-sue letter. *Id.* at 38. On February 18, 1991, the plaintiff filed another complaint against the employer, again in the Western District of New York. *Id.* This complaint alleged that the employer violated Title VII through its termination of her on the basis of race and/or sex. *Id.* On January 18, 1992, the district court granted the employer's motion for summary judgment, concluding that " 'the plaintiff could have raised her Title VII claim in [the earlier suit] and that all prerequisites to the application of *res judicata* have been met.' " *Id.*

The plaintiff appealed to the Second Circuit, arguing that *res judicata* could not bar her second complaint "because the causes of action in *Woods I* and *Woods II* were separate and distinct, and because a Title VII plaintiff has the right to full administrative review prior to instituting a lawsuit, which in this case could not be completed in time to join the Title VII claim with the LMRA claim." *Id.*

Plaintiff in the case *sub judice* argues that the state law claims and the Title VII claims are different claims and do not comprise the same cause of action for purposes of determining the preclusive effect to be given to the judgment in CV494–286. The plaintiff in *Woods* made the same argument but to no avail. *Id.* "The district court correctly determined that the present action involves the same transaction, and therefore the same cause of action, for *res judicata* purposes." *Id.* The *Woods* court stressed that the district court must look to the "identity of facts surrounding the occurrence" rather than the legal theory espoused in the second action. *Id.* at 39. In viewing the two LMRA claim and the Title VII claim, the court found that the two claims were actually one cause of action: "Essentially the same underlying occurrence was relevant to both the LMRA and Title VII claims. Both actions centered

around Dunlop's firing of Woods, the reasons for termination, and her employment history, physical limitations, and qualifications." *Id.* at 38–39.

This reasoning is clearly applicable to the facts at bar. In this case, Plaintiff has sought to litigate (and then relitigate) the propriety of her termination by Defendant. While counsel for Plaintiff has presented some argument attempting to show that the two claims are separate and distinct, this Court finds that the two claims are distinct only in the legal theories presented. The *Woods* court instructs that such an argument is insufficient to prevent satisfaction of the "same cause of action" criterion. *Id.* at 39. This Court, having found that the state law claims and the Title VII claim are the same cause of action, now turns to the question of whether the timing of the EEOC right-to-sue letter operates to prevent the application of the *res judicata* doctrine to the case at hand.

In the *Woods* case, the Second Circuit dealt with facts which were far more likely to cause a court to find *res judicata* inapplicable in that the plaintiff did not receive her right-to-sue letter until some two-and-a-half years after the first case had been dismissed. *Id.* at 37–38. The Second Circuit received extensive *amicus curiae* briefing from the EEOC, urging that it not affirm the application of *res judicata* because to do so "would be inconsistent with the scheme of Title VII." *Id.* at 39. The *Woods* court disagreed: ."[W]hile this Court is committed to giving full effect to the Title VII administrative scheme set up by Congress, we are of the opinion that the language and policy of Title VII do not undercut the application of *res judicata,* and we see no reason militating against application of well-settled claim preclusion principles." *Id.*[5]

The court discussed the various procedural and administrative requirements which all Title VII litigants must satisfy. *Id.* Furthermore, the Court observed that Congress intended for as many Title VII claims as possible to be resolved at the administrative, rather than judicial, level. *Id.* (quoting 118

---

5. The *Woods* court did not discuss the Supreme Court's decision in *Kremer* but arrived at the

same general conclusion through very similar reasoning.

CONG.REC. 7168 (1972): "'It is hoped that recourse to the private lawsuit will be the exception and not the rule, and that the vast majority of complaints will be handled through the offices of the EEOC.'") The Second Circuit panel concluded that legislative hopes did not operate to trump judicial doctrines: "[T]he fact that Congress preferred that Title VII disputes be resolved in the administrative forum does not necessarily excuse compliance with general rules governing federal litigation respecting other potentially viable claims." *Id.* at 39–40.

Upon review of the doctrine of *res judicata* and comparing it with the aspirations of the Title VII drafters, the court found that the two were not incompatible:

> Our analysis leads us to the conclusion that Woods' Title VII action is barred by *res judicata.* We cannot agree with amicus curiae's contention that this result will put future Title VII plaintiffs to the impermissible "Hobson's choice of either leaving their charges in the administrative process, hoping that in the meantime there will be no adverse judgment on other claims which will preclude their Title VII claims, or asking for a right to sue letter and abandoning their administrative mechanism in order to join all claims in a single lawsuit." ... Woods had two available courses she could have followed in order to avoid the sting of *res judicata.* As a first alternative, Woods could have filed her LMRA claim and then sought a stay in the district court pending the outcome of her Title VII administrative proceedings.

Once administrative review had been completed, Woods could have then joined her Title VII claim with her LMRA claim by amending the complaint in the LMRA suit. Following this course, Woods' Title VII claim would have received full administrative review, and at the same time she could have preserved any other claims that she may have had arising from the same transaction. We are of the firm opinion that a district court faced with a stay request in this type of situation ... should grant the stay absent a compelling reason to the contrary.

*Id.* at 41 (citations omitted). The *Woods* court found "no reason to excuse Woods' failure to take these minimal steps necessary to preserve each claim independently" and concluded that *res judicata* barred the second claim. *Id.*

 As far as this Court is concerned, the *Woods* opinion pretty much says it all. Plaintiff in this case had much more of an opportunity to preserve her claim as the EEOC letter arrived during the discovery period of CV494–286. At the very least, Plaintiff could have moved for a stay of the case prior to receiving the EEOC letter or for permissive amendment of the Complaint after receiving the EEOC letter.[6] Had Judge Alaimo not granted either motion, then this Court would have been extremely hesitant to say that the *Woods* opinion is on-point for that case deals with a litigant who, like Plaintiff, failed to take the minimal steps

6. This Court notes that Plaintiff did request Judge Alaimo to stay CV494–286 or to consolidate it with CV495–258. The purpose of the requested stay, however, was not aimed at waiting for any EEOC letter to arrive. Indeed, that letter had been received approximately one year earlier. Rather, it is apparent that the purpose of the requested stay was to sidestep the *res judicata* bullet. Judge Alaimo did not grant the stay but he did consolidate the two cases. The legal effect of this consolidation is little more than a procedural curiosity. The temporary consolidated status of CV494–286 and CV495–258 does not compel this Court to analyze those two cases in any different manner than if they had never been consolidated. Consolidation is simply a judicial tool which "is permitted as a matter of convenience and economy in administration, but does not merge the suits into a single cause, or change the rights of the parties, or make those who are parties in one suit parties in another." *Johnson v. Manhattan Railway Co.,* 289 U.S. 479, 496–97, 53 S.Ct. 721, 727–28, 77 L.Ed. 1331 (1933). When a court consolidates two cases, the two formerly separate "actions do not lose their separate identity" simply by virtue of consolidation. *McKenzie v. United States,* 678 F.2d 571, 574 (5th Cir.1982). Thus, a plaintiff cannot piggy back one complaint onto another through the instrument of a Rule 42(a) consolidation in an attempt to insure the viability of the otherwise defective second complaint: "Even if consolidated, ... the identity of the two actions remains; therefore, if one is terminated before the other, the final judgment in the first might bar the second suit." *Robinson v. Worthington,* 544 F.Supp. 949, 952 (N.D.Ala.1982).

necessary to ensure the actionability of her several claims. In not taking these steps, Plaintiff now finds herself "stung" by the doctrine of *res judicata.*

The *Woods* opinion is by no stretch of the imagination an anomaly. Recently, the Seventh Circuit reached the same conclusion and affirmed a district court's application of *res judicata* to an Age Discrimination in Employment Act (hereinafter "ADEA") case. *Brzostowski v. Laidlaw Waste Sys., Inc.,* 49 F.3d 337 (7th Cir.1995). In that case, the plaintiff was fired by the defendant on July 6, 1992. *Id.* at 338. In September 1992, he filed a state court action alleging that defendant's action in terminating him amounted to a violation of his employment contract. *Id.* The defendant removed the case to federal court where the district court dismissed the case. *Id.* In April 1993, the plaintiff filed an age discrimination complaint with the EEOC. *Id.* He received a right-to-sue letter from that agency on January 26, 1994 and he filed his ADEA complaint in federal court on March 2, 1994. *Id.* The district court found that *res judicata* precluded him from pursuing the ADEA claim. *Id.* Plaintiff appealed and the Seventh Circuit affirmed the district court's decision. *Id.*

As in the *Woods* opinion, the Seventh Circuit did not buy into the separate legal claims argument presented by the plaintiff's counsel:

[W]e find that the two claims before us clearly arise out of the same core of operative facts and are based on the same factual allegations. While the legal elements of each may be different, the central factual issues are identical: Laidlaw's employment actions and Brzostowski's termination. As the district court found, the firing of Brzostowski by Laidlaw constitutes the nucleus of factual allegations giving rise to both suits, because the resolution of both complaints revolves around the issue of whether Laidlaw complied with its legal obligations—arising from either a contract or a federal statute—when it discharged Brzostowski.

*Id.* at 339. Like the Second Circuit panel in *Woods,* the *Brzostowski* court observed that the plaintiff "could have delayed the filing of his first suit or requested that the court postpone or stay the first case. What he cannot do, as he did here, is split causes of action and use different theories of recovery as separate bases for multiple suits." *Id.* Cf. *Herrmann v. Cencom Cable Assocs., Inc.,* 999 F.2d 223, 225–27 (7th Cir.1993) (agreeing with correctness of *Woods* opinion but concluding that district court erred in applying *res judicata* to second suit concerning COBRA insurance coverage because that second suit arose out of events which occurred after the subject termination of employment).

Other federal courts have echoed the tenor of these rulings and it appears as if the impact of the rulings will expand into the majority of the circuits. *See Miller v. United States Postal Serv.,* 825 F.2d 62 (5th Cir. 1987) (finding that, despite administrative requirements of second claim, *res judicata* barred claim under Rehabilitation Act of 1973 when earlier Title VII lawsuit on same factual situation had been adjudicated); *Mennella v. Office of Court Administration,* 938 F.Supp. 128 (E.D.N.Y.1996) (applying *Woods* reasoning and finding that suit involving Title VII claim was barred notwithstanding the fact that the plaintiff had to wait for EEOC letter before initiating action); *Brown v. Commonwealth of Kentucky, Department of Human Resources,* 1987 WL 32331, * *1– 2 (E.D.Ky.1987) (concluding that Title VII claim in second lawsuit was barred because the plaintiff had received right-to-sue letter prior to adjudication of first lawsuit); *see also Bailey v. USX Corp.,* 658 F.Supp. 279, 282–83 (N.D.Ala.1987), *aff'd without addressing issue,* 850 F.2d 1506 (11th Cir.1988) (district court holding that Title VII litigants who wait for EEOC right-to-sue letters are not entitled to any special application of *res judicata* doctrine).

■ "The doctrine of *res judicata* is one of finality, providing that a final judgment rendered by a court of competent jurisdiction on the merits is conclusive as to the rights and responsibilities of the parties and their privies." *Baptiste v. C.I.R.,* 29 F.3d 1533,

1539 (11th Cir.1994). In the light of the analysis undertaken above, this Court concludes that *res judicata* applies in the instant case and, because it applies, it "constitutes an absolute bar" to Plaintiff's Title VII action. *Id.* To find otherwise would be to go against the greater weight of authority and to effectively declare that Title VII litigants, by virtue of their having to wait for administrative acts to occur, are immune from the application of preclusive effect doctrines. Such a position would be untenable.

■ "The doctrine of *res judicata* serves vital public interests beyond any individual judge's *ad hoc* determination of the equities in a particular case. There is simply 'no principle of law or equity which sanctions the rejection by a federal court of the salutary principles of *res judicata*.'" *Federated Dep't Stores, Inc. v. Moitie,* 452 U.S. 394, 401, 101 S.Ct. 2424, 2429, 69 L.Ed.2d 103 (1981) (quoting *Heiser v. Woodruff,* 327 U.S. 726, 733, 66 S.Ct. 853, 856–57, 90 L.Ed. 970 (1946)). In other words, once a court finds that *res judicata* applies, nothing can be done but actually apply the principle and bar the second suit. *Id.*

In finding that this principle applies to CV495–258, this Court must apply the principle and, in so doing, must bar that claim from proceeding forward. This Court grants Defendant's Motion for Summary Judgment.

The Clerk of Court is **AUTHORIZED** and **DIRECTED** to close this case and to enter the appropriate judgment pursuant to Federal Rule of Civil Procedure 58.