Guy T. **LINDLEY** and Palm Beach Technology Investment Corp., Plaintiffs,

v.

Donald R. **DePRIEST** and Fabritek La Romana, Inc., Defendants.

No. 90–7010–CIV.

United States District Court, S.D. Florida, N.D.

Jan. 28, 1991.

Thomas Luken, Fort Lauderdale, Fla., for plaintiffs.

Richard W. Epstein, Greenspoon & Marder, P.A., Fort Lauderdale, Fla., for defendants.

### ORDER OF REMAND

PAINE, District Judge.

This matter is before the court upon the Plaintiff's Motion to Remand and the Defendants' Memorandum in opposition thereto. Having considered the arguments of counsel and the relevant persuasive authority,[1] the court enters the following order.

---

1. In this regard, the court notes that there is no binding authority on this removal issue. As an

order of remand is generally a non-appealable

*Factual and Procedural Background*

The Plaintiff initiated this law suit in the Circuit Court of the Seventeenth Judicial Circuit in and for Broward County, Florida on September 13, 1990. Thereafter, on September 28, 1990, the Plaintiffs attempted to serve the Defendants by delivering copies of the complaint to Mrs. Cherry W. Cook, an individual who the Plaintiffs believed was the Defendants' secretary. On October 16, 1990, the Defendant DePriest executed an affidavit stating that Mrs. Cook was neither an agent of Defendant Fabritek nor an individual who was designated by the corporation to accept service of process. In this same regard, on October 17, 1990, the Defendants moved to quash service of process, alleging defects in both the personal service of process of the Defendant DePriest and the corporate service of process of Defendant Fabritek.

Rather than litigate the service of process issue, the Plaintiffs procured alias summons and effected service on November 29, 1990. Within 30 days thereafter, on December 18, 1990, the Defendants removed the case to this court. On January 2, 1991, the Plaintiffs filed the instant motion to remand.

*General Removal Standard of Review*

The statute governing the issues raised in the present case is found at 28 U.S.C. § 1446(b) which states in pertinent part that

> The notice of removal of a civil action or proceeding shall be filed within thirty days after *the receipt by the defendant, through service or otherwise,* of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based, or within thirty days after the service of summons upon the defendant if such initial pleading has then been filed in court and is not required to be served on the defendant, whichever period is shorter.
> [emphasis added]

Further, "where there is any substantial doubt concerning jurisdiction of the federal court on removal, the case should be re-

final order, there is, understandably, a scarcity

manded and jurisdiction should be retained only where it is clear." *Woods v. Firestone Tire & Rubber Co.,* 560 F.Supp. 588, 590 (S.D.Fla.1983), *quoting, Town of Freedom v. Muskogee Bridge Co., Inc.,* 466 F.Supp. 75, 77 (W.D.Okl.1978). It is well settled that the removal statute is to be *strictly construed* against removal and in favor of remand. *See e.g., Libhart v. Santa Monica Dairy Co.,* 592 F.2d 1062, 1065 (9th Cir.1979).

With this well established mandate of strict construction of removal statutes in mind, the court addresses the instant motion to remand.

The specific issue which is before the court is: Does the thirty day removal period commence when the Defendant *receives* a copy of the initial proceeding or does it commence when *proper service* is effected upon the Defendant?

*Legal Analysis*

Urging the court to retain removal jurisdiction over the instant action, the Defendants suggest that this court rely upon the case of *Love v. State Farm Mut. Auto. Ins. Co.,* 542 F.Supp. 65 (N.D.Ga.1982). This case has become representative of the line of cases which hold that proper service of process must be effected before the time limit for removal begins to run. *Id.* at 67–68. In reaching this conclusion, the *Love* court and courts which have followed it, rely almost exclusively upon the legislative history of the relevant portion of the statute. *Id.; see also Marion Corp. v. Lloyds Bank, PLC,* 738 F.Supp. 1377, 1379 (S.D.Ala.1990).

Urging the court to remand the case due to the untimely-filed petition for removal, the Plaintiffs encourage the court to rely on *Tyler v. Prudential Ins. Company of America,* 524 F.Supp. 1211 (W.D.Pa.1981). *Tyler* has come to represent the line of district court cases which have adopted the "receipt rule." *Tyler* and the cases following it conclude that the "or otherwise" language of § 1446(b) encompasses any receipt of an initial pleading for purposes of

of appellate authority on this issue.

commencing the countdown for removal. *Id.* at 1213. Therefore, under this theory of interpretation of the statute, the determination of proper service of process under state law is not necessary for removal as long as the defendant has received an initial pleading from which he can ascertain that the action is removable. *Id.* at 1214, *citing International Equity Corp. v. Pepper & Tanner, Inc.,* 323 F.Supp. 1107 (E.D. Pa.1971).

The issue at bar is not well settled. In fact, a review of the body of case law addressing this issue reveals an almost even split of authority among the district courts. While the district courts which have addressed the issue have proposed thoughtful and thorough approaches to the resolution of same, the undersigned is compelled to present yet another view.

### Hard Cases Make Bad Law: Analysis of the Love Decision

This court finds that the facts of the *Love, supra,* decision warrant closer scrutiny than any of the courts following this line of legal reasoning have devoted to them. In *Love,* the Plaintiffs filed their initial complaint in state court on March 19, 1982. The Plaintiffs' attorney also sent a letter and an unconformed copy of the complaint to Defendant State Farm's regional office in Jacksonville, Florida. The letter stated as follows:

> Enclosed is a copy of a complaint which has been filed in the Superior Court of Henry County. I have advised the marshal not to effectuate service on State Farm. I am hopeful that we can resolve this claim without any further litigation.

*Love,* at 66. The postal receipt indicated that State Farm's Jacksonville office received the letter on March 22, 1982. State Farm answered the complaint on May 14,

1982, and filed a Petition for Removal on May 17, 1982.[2]

It is relevant to this court that, in opposition to the motion for remand, the Defendant State Farm also challenged whether the copy of the unconformed complaint which it received in March, was "a copy of the initial pleading" within the meaning of the "receipt rule" of section 1446(b). *Id.* at 67. The court acknowledged the Defendants' alternative arguments when it said:

> First, State Farm implicitly contends that proper service is a prerequisite to the commencement of the removal period. Second, State Farm contends that an unconformed copy of a complaint is not "a copy of the initial pleading" within the meaning of section 1446(b). *State Farm emphasizes the latter argument, but the Court will begin by considering the former.*

*Id.* [emphasis added]. Because the court held that informal receipt, without proper service, was insufficient to commence the removal period, it never reached the argument which State Farm emphasized, *to wit,* whether an unconformed copy of the complaint qualifies as a "copy of the initial pleading" under section 1446(b).[3] Having emphasized the issue of what constitutes proper *receipt* of an initial pleading under the applicable statute, it would appear that State Farm, the prevailing party on the removal issue in *Love,* almost impliedly suggested that the "receipt rule" was a valid interpretation of the statute.

The court denied the Plaintiffs' Motion for Remand and accepted removal, in favor of the Defendant State Farm. Specifically, the court rejected the "receipt rule" and held that the 30 day countdown for purposes of removal did not commence until proper service was effected. *Id.* at 68. The ruling was based on a detailed review of the legislative history of the statute.

---

**2.** Interestingly, the *Love* court noted that the record was not clear as to when, if at all, the Plaintiffs ever properly served the complaint upon the Defendants. The court merely found that proper service had not been effected as of 30 days before State Farm removed the action to federal court. *Id.* at 66, n. 1.

**3.** As relevant dicta, this court must note that, had the court addressed this issue, the Defendant State Farm would probably have lost as the copy of the exact complaint which was filed in state court surely constituted adequate notice from which the Defendants could ascertain that removal was available to them. *See International Equity Corp, supra,* at 1109.

Despite Judge Evans' sound legislative history analysis, the undersigned finds *Love* to be an example of what Justice Holmes cautioned against in *Northern Securities Co. v. United States,* 193 U.S. 197, 24 S.Ct. 436, 48 L.Ed. 679 (1904) when he said, "... hard cases make bad law."

The facts supporting such a conclusion are as follows: State Farm apparently relied upon the Plaintiffs' representation that resolution of the claim without a judicial remedy was likely. In light of the *Love* Plaintiffs' expression of optimism regarding settlement, it is fair to assume that the State Farm attorney who received the letter and the initial complaint was not *at that time* contemplating State Farm's legal/judicial strategy. It was not until 2 months later, when the matter was still unresolved, that the Defendant apparently addressed forum strategy and attempted to remove the case to the district court.

Judge Evans was faced with a difficult situation: to apply the statute at its face value would have precluded the possibility of removal by the Defendants who had apparently been duped [4] by the Plaintiffs.[5] In short, to hold that the informal receipt of the complaint triggered the time period for removal, the court would have necessarily arrived at what would have clearly been an unjust conclusion given the particular facts of the case.

These facts reveal that *Love* was not the common "receipt" versus "perfected process" case for purposes of calculating the time within which removal can be effected. Rather, *Love* involves a Defendant's apparent detrimental reliance on the Plaintiffs' representation that settlement was probable. In this regard, not only did the *Love* Defendants receive a copy of the complaint in March but they, additionally, received a stated expression of the Plaintiffs' optimism that judicial intervention might be unnecessary. This fact makes the *Love*

case distinguishable from a case such as the one at bar where receipt of the complaint was not accompanied by any such language and there has been no facts which might support such a detrimental reliance. Accordingly, this court is not persuaded by the reasoning in *Love.*

### The Legislative History

In 1949, Congress revised 28 U.S.C. § 1446(b) to ostensibly to correct a situation which existed in New York and other states which did not require that the initial pleading accompany service of process. *Marion Corp. v. Lloyds Bank, PLC,* 738 F.Supp. 1377 (S.D.Ala.1990). The 1949 Amendment of subsection (b), Act May 24, 1949, § 83(a), provided that the petition for removal need not be filed until 20 days after the defendant has received a copy of the plaintiffs initial pleading, and provided that the petition for removal shall be filed within 20 days after the service of summons. 28 U.S.C.A. § 1446 (1949), Historical and Revision Notes, 1949 Amendment. Specifically, the legislative history of § 83 of the Bill states:

> Subsection (b) of section 1446 of titles 28, U.S.C. as revised [in 1948], has been found to create difficulty in those states, such as New York, where suit is commenced by the service of a summons and the plaintiff's initial pleading is not required to be served or filed until later.

> The first paragraph of the amendment to subsection (b) corrects this situation by providing that the petition for removal need not be filed until 20 days *after the defendant has received a copy of the plaintiff's initial pleading.*

> This provision, however, without more, would create further difficulty in those States, such as Kentucky, where suit is commenced by the filing of the plaintiff's initial pleading and the issuance and ser-

**4.** While the court finds that it is unlikely that the Plaintiffs intentionally designed such a situation to deprive the Defendants of their opportunity for removal, this court cannot avoid the fact that the Defendants delay in removing the action appears to have been due, at least in part, to their reliance upon the Plaintiffs' expression

of hope toward non-judicial resolution of the claim.

**5.** As noted, *supra,* State Farm's alternative argument, although emphasized by them, would most likely have been a losing argument in light of the then-current authority.

vice of a summons without any requirement that a copy of the pleading be served upon or otherwise furnished to the defendant. Accordingly, the first paragraph of the amendment provides that in such cases the petition for removal shall be filed within twenty days after the service of the summons.

H.R.Rep. No. 352, 81st Cong., 1st Sess., reprinted in 1949 U.S.Code Cong.Serv. 1248, 1254, 1268. [emphasis added].

Congress' concerns regarding the situation in Kentucky were explicitly expressed in the latter part of the amended paragraph when it provided the alternative: "... or within [thirty] days after the service of summons upon the defendant if such initial pleading has then been filed in court and is not required to be served on the defendant, whichever period is shorter."

The concerns regarding the New York situation were more generally expressed in the early part of the paragraph when Congress said: "The notice of removal of a civil action or proceeding shall be filed within [thirty] days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based...."

The *Love* court determined that Congressional intent was to expand the removal period in states following the New York rule, *not to diminish the right to removal.* *See Love*, 542 F.Supp. at 68; *see also Marion Corp.*, 738 F.Supp. at 1379. This court finds no such expression of such intent in the above-quoted report.

First, the notion that Congress' intent was to expand the removal period in any state, is directly refuted by its clear language at the end of the amended section wherein they stated "whichever is shorter." If Congress had anticipated an expansion of time through this amendment, they would have more appropriately stated "whichever is greater," thereby clearly expressing such intent. However, not only did they not affirmatively express such intent, but they contrarily expressed the opposing view.

The Congressional Report further reveals that the impetus for Congressional reform was its concern that the time for removal might run prior to a defendant ever having received a copy of the complaint in states such as New York. This evidences Congress' prevailing concern regarding the necessity of "receipt" prior to triggering the removal period.

Further, a review of the grammatical construction of the statute additionally supports a finding that Congress' primary concern was with *receipt* of the initial pleading, rather than with perfection of service. Congress emphasized "receipt" and subordinated "service of process" when it chose to set off "through service or otherwise" as a dependant clause as follows: *"*The notice of removal of a civil action or proceeding shall be filed within [thirty] days after the *receipt by the defendant, through service or otherwise*, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based...."

This court acknowledges its disagreement with a recent opinion from a court in this Circuit which followed the *Love* line of reasoning. That court determined that the subject statute should not be applied on its face largely because Congress' words "or otherwise" are "so vague as to have no meaning." *See Marion Corp., supra*, at 1379. To hold that Congress' language is so vague as to be incapable of definition would require this court to deem the statute to be void for vagueness. However, such is not the case and no judge addressing the statute has ever suggested such a holding. This court finds that the "or otherwise" language is intentionally *broad*, not *vague.* The definition of "broad," as stated in Websters New World Dictionary, is tolerant, liberal or wide in range, not limited.

The Supreme Court recently offered guidance for courts which are called upon to determine Congressional intent from the words they chose to use. *See H.J. Inc. v. Northwestern Bell Telephone* 492 U.S. 229, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989). In wrestling with the difficult definition of

the word "pattern," as used by Congress in the RICO statute, the *H.J. Inc.* Court concluded that, void special, textual identification of the word "pattern," Congress intended a flexible approach to its definition. *Id.* Most relevantly, Justice Brennan noted that such an approach would necessarily require the assumption that the *legislative intent is adequately expressed by the ordinary meaning of the words Congress chose to use. H.J. Inc.* at 2900 [emphasis added].

Therefore, while legislative history is helpful, this court finds that the law which must be applied is found in what Congress actually said, not in speculation about what it meant to say. In the statute in question in this case, Congress chose to use the words "or otherwise." The ordinary meaning of these words anticipates a liberal, unlimited approach which necessarily encompasses varied possibilities under the statute.

There remains, however, a limitation upon the above-stated common-meaning theory of interpretation. The Eleventh Circuit addressed this limitation in *Bailey v. USX Corp.,* 850 F.2d 1506, 1509 (11th Cir. 1988), when it held that "while it is true that the language of a statute should be interpreted according to its ordinary, contemporary and common meaning, this plain-meaning rule should not be applied to produce a result which is actually inconsistent with the policies underlying the statute." *Id.* [citation omitted].

Having found that Congress' choice of words were intentionally broad, the court is confident that a liberal application of this statute is not inconsistent with the Congressional policy underlying same. While it might be true that such an interpretation does not exactly mirror the Congressional policy, it cannot be argued that same is inconsistent with the intended policy.

Finally, regarding speculation about legislative history and Congressional intent, this court notes that the "receipt rule" under the amended statute was employed by the courts as early as 1952. In *Potter v. Kahn,* 108 F.Supp. 593 (S.D.N.Y.1952), the district court rejected a Defendant's

argument that the removal period did not commence to run upon receipt of the initial pleading, but rather it first began to run when process was perfected. Specifically, the court held that

> This proposition can be sustained only by reading into the statute a provision which is not only not there but which Congress seems deliberately to have omitted. That, I think, is beyond this Court's power.

*Id.* at 594.

Thereafter, in *Raymond's, Inc. v. New Amsterdam Casualty Company,* 159 F.Supp. 212 (D.Mass.1956) another district court was called upon to wrestle with the difficult interpretation of Congress' statutory expression. In that case the court found a petition for removal to be untimely under the statute and held:

> While Congress has been generous with respect to removals, it has, in general, sought to promote a prompt determination by defendant whether he intends to take advantage of the removal procedure. It would therefore be normal to start the calculation from the time defendant could know of the claim against him....

*Id.* at 215. The court went on to comment on the chosen language of Congress in the following way:

> No doubt, it would have been possible to express this idea more clearly than is done in the 1949 revision of § 1446. But a sympathetic reader can realize the point at which Congress was driving. And the language chosen while not altogether happy is at least consistent with the Congressional purpose.

*Id.*

Thirty-nine years have passed since the first district court applied the "receipt rule" for purposes of calculating the removal time under the 1949 Congressional amendment. Further, Congress has convened well over 40 times since Judge Wyzanski, speaking in *Raymond's, Inc., supra,* adopted the "receipt rule" and commented on the lack of clarity of the language of the 1949 amendment. Despite these judicial findings, that language of the

statute which we are addressing herein, remains intact, exactly as it appeared in the 1949 amendment. Until Congress chooses to halt such an application of its language by amending the statute to include words of limitation, this court can only conclude that Congress meant what it said and nothing less.

### Conclusion

Cognizant of both the well established authority favoring remand and the above-mentioned relevant authority interpreting 28 U.S.C. § 1446(b) since the 1949 amendment, the undersigned joins the line of district court cases following *Tyler v. Prudential Ins. Company of America,* 524 F.Supp 1211 (W.D.Pa.1981). Specifically, this court adopts the "receipt rule" which requires a finding that the "or otherwise" language of § 1446(b) encompasses any receipt of an initial pleading for purposes of commencing the countdown for removal.

In the instant case it is clear that the defendant had received the complaint and initial, albeit defective, process on September 28, 1990. Removal on December 18, 1990, over 2 months after receipt of the initial pleading in this case, is untimely.

Accordingly, it is

ORDERED and ADJUDGED that the Plaintiff's Motion to Remand is GRANTED. This case is hereby REMANDED to the Circuit Court of the Seventeenth Judicial Circuit in and for Broward County, Florida, the court from which it was untimely removed.

DONE and ORDERED.