EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Plaintiff-Appellant,

v.

TOTAL SYSTEM SERVICES, INC., Defendant-Appellee.

No. 99-13196.

United States Court of Appeals,

Eleventh Circuit.

Jan. 29, 2001.

Appeal from the United States District Court for the Middle District of Georgia (No. 96-00147-CV-4-DF-4); Duross Fitzpatrick, Judge.

Before ANDERSON, Chief Judge, and TJOFLAT, EDMONDSON, BIRCH, DUBINA, BLACK, CARNES, BARKETT, HULL, MARCUS and WILSON, Circuit Judges.

PER CURIAM:

A member of the Court in active service having requested a poll on the reconsideration of this cause en banc, and a majority of the judges in active service not having voted in favor of it, Rehearing En Banc is DENIED.

BARKETT, Circuit Judge, dissenting:

I respectfully dissent from the court's denial of rehearing en banc. I believe that the panel's opinion holding that an employee's participation in an employer's internal investigation is not protected from retaliation under Title VII's participation clause unless an EEOC complaint has been filed[1] is an important legal issue that should be addressed by the entire court. I also believe that the panel's opinion in this regard does not comport with a proper reading of Title VII, or with *Faragher v. City of Boca Raton,* 524 U.S. 775, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998), and *Burlington Indus., Inc. v. Ellerth,* 524 U.S. 742, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998).[2]

DISCUSSION

Title VII does not state that protection for retaliation exists *only* when an EEOC complaint has been

---

[1] "[B]ecause no EEOC complaint had been filed before [the employee's] termination, the taking part in Defendant's internal investigation did not constitute protected expression under the participation clause of Title VII." *EEOC v. Total System Serv., Inc.*, 221 F.3d 1171, 1174 (11th Cir.2000).

[2] The panel opinion rejects the use of *Faragher* and *Ellerth* by the EEOC, stating that "[t]hese decisions decided the proper level of vicarious liability that employers have for the acts of supervisors." *EEOC,* 221 F.3d at 1175 n. 3. While this is correct, it does not address other aspects of these opinions which include their impact on an employee's protection during an internal investigation.

filed. Instead, the statute provides that:

> It shall be an unlawful employment practice for an employer to discriminate against any of his employees ... because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

42 U.S.C. § 2000e-3. The panel opinion says that "an investigation ... under this subchapter" means that an EEOC complaint has been filed. However, this conclusion is unsupported by any analysis under the well-established canons of statutory construction which mandate that a remedial statute, such as Title VII, be construed liberally to give effect to its underlying purpose. These rules of construction under Supreme Court precedent, Eleventh Circuit precedent, and case-law from our sister circuits require that we interpret ambiguities in Title VII in light of the congressional purpose animating the statute as a whole. Analyzing the undefined phrase "investigation ... under this subchapter" pursuant to these rules of construction yields the conclusion that an employee's participation in an employer's internal investigation constitutes protected expression under the participation clause of Title VII.

1.	*The Supreme Court has made clear that courts are to interpret statutory ambiguity in Title VII to address the "evil [the statute was] designed to remedy."[3]*

In *Robinson v. Shell Oil,* 519 U.S. 337, 117 S.Ct. 843, 136 L.Ed.2d 808 (1997), the Supreme Court articulated a two-step analysis to be followed by courts facing questions of statutory interpretation under Title VII. First, courts must look to "the [statutory] language itself, the specific context in which that language is used, and the broader context of the statute as a whole" to "determine whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case." *Id.* at 340, 117 S.Ct. 843. If the language is "unambiguous" and "the statutory scheme is coherent and consistent," the inquiry ends there. *Id.* (quoting *United States v. Ron Pair Enter. Inc.,* 489 U.S. 235, 240, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989)). If an ambiguity is identified, however, courts must look to "[t]he broader context provided by other sections of the statute" to resolve it. *Robinson,* 519 U.S. at 345, 117 S.Ct. 843. As the *Robinson* Court demonstrated, this step requires courts to (1) identify the broader goals of the statute as a whole, (2) determine how the proposed alternative readings of the statute would comport with those goals, and (3) resolve the case

---

[3]*Holy Trinity Church v. United States,* 143 U.S. 457, 459, 12 S.Ct. 511, 36 L.Ed. 226 (1892). Since *Holy Trinity Church,* the Supreme Court has reaffirmed on several occasions this approach to interpretation of broad statutory schemes. *See, e.g., Crandon v. United States,* 494 U.S. 152, 158, 110 S.Ct. 997, 108 L.Ed.2d 132 (1990) ("In determining the meaning of the statute, we look not only to the particular statutory language, but to the design of the statute as a whole and to its object and policy ."); *K Mart Corp. v. Cartier, Inc.,* 486 U.S. 281, 291, 108 S.Ct. 1811, 100 L.Ed.2d 313 (1988) (interpreting § 526 of the Tariff Act); *Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 51, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987) (interpreting § 514(a) of ERISA).

in favor of the reading that best helps to realize the goals of the statute. Several circuits, including our own, have explicitly recognized the principle that interpreting Title VII requires courts to attend to the broader purposes behind the statute.[4]

2.  *Application of the interpretive method mandated by* Robinson *leads to the conclusion that the term "investigation" in § 2000e-3 includes an employer's internal investigations of complaints under Title VII.*

A.  *Statutory ambiguity*

Under *Robinson,* a statutory term is considered "ambiguous" when it is susceptible to various interpretations. *Id.* at 340-41, 117 S.Ct. 843. Subchapter VI of Chapter 21 of Title 42 does not define the term "investigation ... under this subchapter," see *Clover,* 176 F.3d at 1352, and there is more than one possible

---

[4]In *Bailey v. USX Corp.,* 850 F.2d 1506 (11th Cir.1988), this Court addressed the same question as the *Robinson* Court did nine years later: whether the protections of § 2000e-3 extend to former employees. The *Bailey* Court noted that every court to have addressed the question answered it in the affirmative on the basis of "a common sense reading in keeping with the purpose of the statute," and followed suit. *Id.* at 1509 ("While it is true that the language of a statute should be interpreted according to its ordinary, contemporary, and common meaning, this plain-meaning rule should not be applied to produce a result which is actually inconsistent with the policies underlying the statute.") (citations omitted); *see Sherman v. Burke Contracting, Inc.,* 891 F.2d 1527 (11th Cir.1990) (reaffirming this method for interpreting ambiguities in Title VII).

In *EEOC v. Ohio Edison Co.,* 7 F.3d 541 (6th Cir.1993), the Sixth Circuit held that § 2000e-3 extends protection to employees retaliated against for another employee's participation in investigations of Title VII violations. While the Sixth Circuit acknowledged that the language of § 2000e-3 does not expressly cover such "third party reprisals," it found that, "[in] enacting § 2000e-3, Congress unmistakably intended to ensure that no person would be deterred from exercising his rights under Title VII by the threat of discriminatory retaliation." *Id.* at 543. Because "tolerance of third-party reprisals would, no less than the tolerance of direct reprisals, deter persons from exercising their protected rights under Title VII," the Sixth Circuit concluded that third party employees were covered by § 2000e-3. *Id.; see also id.* at 545 ("[C]ourts have routinely adopted interpretations of retaliation provisions in employment statutes that might be viewed as outside the literal terms of the statute in order to effectuate Congress' clear purpose in proscribing retaliatory activity... [C]ourts have frequently applied the retaliation provisions of employment statutes to matters not expressly covered by the literal terms of these statutes where the policy behind the statute supports a non-exclusive reading of the statutory language.").

In *McDonnell v. Cisneros,* 84 F.3d 256 (7th Cir.1996), Judge Posner held that § 2000e-3's protections extend to an employee retaliated against for failing to prevent co-workers from filing sexual harassment complaints. Although a literal interpretation of the provision would not allow for such a claim, Judge Posner reasoned that, were § 2000e-3 held not to apply, "the result would be that employers could obtain immunity from the retaliation statute by directing their subordinates to take steps to prevent other workers (as by threat of dismissal or other discipline) from complaining about discrimination," and that "it would be very odd to suppose" that Congress intended this result. *Id.* at 262; *see also Castellano v. City of New York,* 142 F.3d 58, 69 (2d Cir.1998); *Pantchenko v. C.B. Dolge Co., Inc.,* 581 F.2d 1052, 1054 (2d Cir.1978) ("There is no surer guide in the interpretation of a statute than its purpose when that is sufficiently disclosed; nor any surer mark of solicitude for the letter than to wince at carrying out that purpose because the words used do not formally quite match with it.") (internal quotations omitted).

interpretation of the term "investigation" as it is used in the § 2000e-3 context. Although "investigation" in § 2000e-3 must include official EEOC investigations, nothing in the text or context of the provision indicates that the meaning of the term is confined to investigations undertaken by the EEOC, or in response to an EEOC complaint. The panel reads this term to require at least an official EEOC complaint in order for the participation clause to apply.[5] An equally plausible reading is that the term "investigation" includes employers' internal investigations. Indeed, employer's internal investigation procedures for addressing sexual harassment likely would not exist if Title VII did not impose civil liability. Thus, under *Robinson,* a court must determine which of these meanings comports with congressional intent.

B.  *Determining which interpretation of the statute is in keeping with "the broader context of the statute as a whole"*

The Supreme Court has delineated the congressional intent of Title VII on a number of occasions. In *Ellerth,* the Supreme Court noted that "Title VII is designed to encourage the creation of antiharrassment policies and effective grievance mechanisms." *Ellerth,* 524 U.S. at 763, 118 S.Ct. 2257. Title VII aims both to protect employees in the workplace and to encourage employers to be proactive in maintaining a good working environment for their employees. *See Int'l Bhd. of Teamsters v. United States,* 431 U.S. 324, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977); *McKennon v. Nashville Banner Publ'g. Co.,* 513 U.S. 352, 358, 115 S.Ct.

---

[5]This issue is one of first impression in this Circuit. In *Clover v. Total System Serv., Inc.,* 176 F.3d 1346 (11th Cir.1999), the Court noted that it had "no reason to decide in this case whether the participation clause extends to cover an employee's participation in an investigation conducted by her employer before receiving a notice of charge of discrimination from the EEOC." *Id* . at 1353.

The panel cites to cases in the Fifth, Sixth and Ninth Circuits in support of the view that an official EEOC complaint is required in order for the participation clause to apply. However, *Byers v. Dallas Morning News, Inc.,* 209 F.3d 419 (5th Cir.2000), has no applicability because it did not involve the participation clause as there was no internal investigation at all in *Byers.* The issue in *Byers* was whether the plaintiff had suffered retaliation for opposing unlawful employment practices. The court ruled on the merits that he had not.

*Booker v. Brown & Williamson Tobacco Co.,* 879 F.2d 1304 (6th Cir.1989), is likewise inapplicable. In *Booker,* the Sixth Circuit addressed retaliation claims under a state law, not Title VII. *Id.* at 1309. Furthermore, the *Booker* court's interpretation of the statutory scheme has been called into question. *See McLemore v. Detroit Receiving Hosp. & Univ. Med. Ctr.,* 196 Mich.App. 391, 493 N.W.2d 441, 443 (Mich.Ct.App.1992) ("We strongly disagree with [the *Booker* court's] interpretation of the act .... We will not interpret the act to allow employers to peremptorily retaliate against employees with impunity."). *See also Ozturk v. Motorola, Inc.,* (N.D.Ill.1998) (noting that the Booker interpretation of the statute "has since been rejected.").

The only opinion to have addressed the issue here is *Vasconcelos v. Meese,* 907 F.2d 111 (9th Cir.1990), which reads the statute as the panel does here. The *Vasconcelos* court, however, likewise failed to conduct the statutory analysis required by *Robinson,* simply stating its unsupported conclusion. Moreover, *Vasconcelos* was decided before the decisions in *Faragher* and *Ellerth.*

879, 130 L.Ed.2d 852 (1995) (Congress designed Title VII's remedial measures to "serve as a spur or catalyst to cause employers to self-examine and to self-evaluate their employment practices and to endeavor to eliminate, so far as possible, the last vestiges of discrimination.") (internal quotations and citation omitted).

Mindful of Title's VII's intent, we look to resolve the ambiguity between the plausible alternative readings of the term "investigation" by considering "a primary purpose of [Title VII's] antiretaliation provisions," that of "[m]aintaining unfettered access to statutory remedial mechanisms." *Robinson,* 519 U.S. at 346, 117 S.Ct. 843. Any disincentives employees face to providing investigators—internal or external—with pertinent information regarding Title VII violations run counter to this purpose. As the EEOC itself has recognized, "if retaliation for engaging in such protected activity were permitted to go unremedied, it would have a chilling effect upon the willingness of individuals to speak out against employment discrimination." 2 EEOC Compl. Manual (BNA) § 614. 1(f)(2), at 614:0007 (Apr.1988). The panel opinion will create precisely this chilling effect. It fashions a disincentive to employees' participation in internal investigations by drastically reducing their protection against retaliation unless the investigation arises as a result of a specific complaint filed by the EEOC. Furthermore, participants in internal investigations are *more* vulnerable to retaliation, as they are conveying potentially damaging information, not to neutral EEOC investigators, but to the very people who wield absolute control over their employment situation, and who stand to be sued if the complaint proves valid. It thus seems *more* likely, not less, that employees will face retaliation for their participation when no EEOC official is on hand to oversee the process or to provide a buffer between the employer and the participating employee. The panel opinion's denial of protection cannot be squared with what Congress intended when it explicitly enshrined protection against retaliation in Title VII.

In distinguishing this case from *Clover v. Total System Serv., Inc.,* 176 F.3d 1346, 1353 n. 3 (11th Cir.1999),[6] the panel opinion suggests that protecting the participation of employees in internal investigations under the participation clause would render the opposition clause meaningless. This, however, would not be true. There are many other means by which an employee can oppose discrimination in the workplace, aside

---

[6]In *Clover,* prior to the filing of an EEOC charge of discrimination and the employer's receipt of notice of that charge, the employer had conducted another in-house investigation into the same allegations of sexual harassment. *Id.* at 1349. Under the rule of this case, had Clover also participated in the earlier investigation (she did not), she would not have been protected for statements made during that investigation, yet would have been protected for statements made in the internal investigation following the filing of the EEOC charge. Given that both investigations focused on the same incident, it does not make sense that Clover would have exposed herself to retaliation by cooperating earlier in the process.

from participating in internal investigations. The EEOC has identified a number of examples of "opposing" conduct that are protected by Title VII, including "complaining to anyone (management, unions, other employees, or newspapers) about allegedly unlawful practices; refusing to obey an order because the worker thinks it is unlawful under Title VII; and opposing unlawful acts by persons other than the employer—e.g., former employers, union, and co-workers." *Johnson v. Univ. of Cincinnati,* 215 F.3d 561, 579-80 (6th Cir.2000) (citing the EEOC Compliance Manual, (CCH) ¶ 8006). Moreover, the person claiming retaliation need not be the person who engaged in the opposition, as Title VII prohibits retaliation against someone closely related to or associated with the person exercising his or her statutory rights. *Id.* at 580 (quoting EEOC Compliance Manual (CCH) ¶ 8006).

The only interpretation of the statute that is consistent with Congress' goal of encouraging internal investigations of Title VII violations is that Congress intended to hold employers liable for harassment when they knew or should have known about it and failed to take steps to remedy the problem, an interpretation that the Supreme Court found in *Faragher* and *Ellerth. See Faragher,* 524 U.S. at 801-07, 118 S.Ct. at 2290-92; *Ellerth,* 524 U.S. at 763-65, 118 S.Ct. at 2270.

3. *Denying Title VII protection to employees who participate in internal investigations does not comport with* <u>Faragher</u> *or* <u>Ellerth</u>

In keeping with the intent of Title VII of "encourag[ing] the creation of antiharrassment policies and effective grievance mechanisms," *Ellerth,* 524 U.S. at 763, 118 S.Ct. 2257, the Supreme Court established the affirmative defense for employers found vicariously liable to an employee who is a victim of sexual harassment when no "tangible employment action" has been taken: "(a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventative or corrective opportunities provided by the employer or to avoid harm otherwise." *Faragher,* 524 U.S. at 807, 118 S.Ct. 2275, *Ellerth,* 524 U.S. at 765, 118 S.Ct. 2257. Under this rule, the employee essentially is required to take advantage of any preventive or corrective opportunities provided by the employer. Thus, if the corrective grievance process provided by the employer includes an internal investigation, then the employee must participate in such investigation, even though he or she will not be protected from retaliatory acts for her statements in participating in the investigation. Equally important, if an employer asks an employee to participate in an internal investigation, the employee will not be protected under the participation clause against retaliatory acts by the employer

under the rule in this case.[7] Yet failure to participate in the internal investigation would provide the employer with an affirmative defense. Such a situation exposes employees to precisely the type of risks against which Title VII was intended to guard.

Given the well established principle that Title VII, as remedial legislation, should be construed broadly, and mindful of the Supreme Court's directive that the EEOC's interpretation of Title VII is entitled to "great deference" by the courts, see *Griggs v. Duke Power Co.,* 401 U.S. 424, 434, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971),[8] it seems that Title VII's participation clause must cover internal investigations, even in the absence of an EEOC notice of charge of discrimination. To hold otherwise would defeat the purpose of the participation clause and expose employees to significant risk of retaliation.

EDMONDSON, Circuit Judge, concurring:

I dissent from Judge Barkett's dissent.

In other words, I concur in the majority's denial of rehearing en banc. I believe the panel's decision is correct given the facts of the case. I will not repeat everything that was said in the panel opinion, but I do think these three points are important.

First, the panel's decision does not hold (nor does it suggest) that a retaliation claim is impossible unless someone has first filed an applicable EEOC complaint. To read the opinion differently is inaccurate. We recognize that a plaintiff—in circumstances similar to those in this case, that is, a private employer's internal investigation with no government involvement—might have protection under Title VII and that this protection would flow from the "opposition clause" of the Act.[1]

---

[7] There is incentive for employers to "keep things in-house" by conducting internal investigations, thereby avoiding negative publicity and resource-consuming litigation that can come with formal charges. However, employees would have a disincentive to cooperate, if their participation in internal investigations is not protected.

[8] The EEOC has assigned responsibility for sexual harassment of employees to employers who knew or should have known about the harassment, "unless [they] can show that [they] took immediate corrective action." *See also* 29 C.F.R. § 1604.11.

[1] In this case, the defendant employer fired its employee because the employer, in good faith, believed she lied in an internal investigation that the employer was conducting on sexual harassment charges made about one of its supervisors, charges made by another employee. This supervisor was, by the way, fired for harassment.

The reason we distinguish between the participation and the opposition clauses is the way the EEOC argued its case to the panel. The EEOC drew sharp distinctions between the protection available under these clauses. "Unlike protection under the opposition clause, which is conditioned on the reasonableness of an employee's opposition, protection under the participation

Second, because the pertinent statutory language is not really ambiguous, we are not free to engage in some kind of statutory construction to widen its scope. We avoided a forced reading; we read the whole statutory section in the ordinary way. The words "under this subchapter" appear at the end of the participation clause;[2] and therefore, the qualifying phrase "under this subchapter" applies only to the immediately preceding clause: the participation clause protects employees who participated in an investigation conducted "under this subchapter." Those kinds of investigations are investigations tied to charges before the EEOC.

Third, applying the law as the panel does, does not defeat the plain purpose of Title VII. While policy implications should make little difference to a court once it—from the language of the statute itself—has determined what the law is, I do not concede that our decision creates bad policy or frustrates the spirit of the law. Applying the law as the panel does, may significantly advance the fulfillment of Title VII's goals by encouraging employers to take responsibility, to engage in self-examination, and to resolve—speedily, internally and voluntarily—disputes involving claims of discrimination: resolutions without waiting for government intervention (itself a limited resource) and without too much fear (as long as the employer acts honestly) of potential, troublesome and costly litigation. Also, while we recognize some competing interests (as articulated in the important *Faragher* and *Ellerth* decisions) in Title VII cases between employees and employers, we believe that we do not disobey *Faragher* and *Ellerth* and that Congress, in the statute, has already balanced those interests. An employee who participates in an employer's own internal investigation of discrimination is within the scope of the opposition clause and can be protected by the clause: for example, an employer cannot throw up just a pretext and get away with punishing an employee for speaking out. But, at the same time, an employer is allowed a bit more freedom in some of its personnel decisions when the employer acts voluntarily to investigate wrongful discrimination and takes the initiative in rooting out discrimination in the workplace: for example, an employee's knowingly false statements are not protected.

---

clause is absolute, protecting an employee even when she lies." Appellant Brief at p. 10-11 (citations omitted).

[2]The pertinent statute is written this way:

It shall be an unlawful employment practice for an employer to discriminate against any of his employees ... [1] because he [the employee] has opposed any practice made an unlawful employment practice by this subchapter, or [2] because he [the employee] has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter. (Words and numbers in brackets added.)