[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT



**FILED**
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
AUGUST 7, 2000
THOMAS K. KAHN
CLERK

----------------------------------------

No. 99-13196

----------------------------------------

D. C. Docket No. 96-00147-CV-4-DF-4


EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,

                                        Plaintiff-Appellant,

    versus

TOTAL SYSTEM SERVICE, INC.,

                                        Defendant-Appellee.


-------------------------------------------------------------------
Appeal from the United States District Court
for the Middle District of Georgia
-------------------------------------------------------------------

**(August 7, 2000)**


Before EDMONDSON, HULL, and WOOD*, Circuit Judges.

_____

*    Honorable Harlington Wood, Jr., U.S. Circuit Judge for the Seventh Circuit, sitting by
     designation.


EDMONDSON, Circuit Judge:

Plaintiff, the Equal Employment Opportunity Commission ("EEOC"), brought suit on behalf of an employee of Defendant, Total Systems Services, Inc., alleging that the employee was terminated in retaliation for engaging in statutorily protected conduct under Title VII. The district court granted summary judgment for Defendant. We affirm.

BACKGROUND

From November 1990 until October 1993, Lindy Wright Warren worked for Defendant. In October, Defendant terminated Warren's employment on the grounds that she had lied in an internal investigation of a supervisor's alleged sexual harassment. The EEOC now brings suit on Warren's behalf, alleging that her termination was unlawful retaliation under Title VII.

In October 1993, Susan Norwood, a coworker of Warren, complained to Assistant Department Manager Eric Seldon that supervisor Arthur Wimberly had been sexually harassing some female employees. The complaint reached Total Systems's Human Resources Management Division ("HRMD"). HRMD conducted an investigation into the complaint. Eight women, who had worked with Wimberly, were interviewed and many confirmed that he had engaged in sexually harassing

2

conduct.  And at least three men were interviewed, two of whom stated that they were aware of some objectionable conduct by Wimberly.  The investigators concluded that Wimberly engaged in sexual harassment.  He was fired.

During the investigation, one of the male interviewees said that he had heard a rumor that Wimberly had come up to female workers, unzipped his pants, and had said something like "I've got your lunch right here."  As part of the investigation, women were asked about this rumored incident.

Warren was the only employee who stated she observed this zipper incident.[1]  Warren told the investigators that two co-workers, Susan Norwood and Brenda Silvestri, were present during the incident.  But then, although Norwood and Silvestri confirmed some of Wimberly's harassing conduct, these women denied witnessing the zipper incident.  This allegation was the only story about Wimberly that the investigators were unable to corroborate.  Warren reaffirmed her story when questioned by then Senior Vice President of Human Resources, Elizabeth James.  James became convinced that Warren had not told the truth about this incident, and Warren was fired for lying during an investigation.

Warren, pursuant to Defendant's open-door policy, discussed her termination with Total Systems Vice Chairman of the Board Kenneth Evans.  Evans ordered a

---

[1]Warren states in her deposition that Wimberly "reached for his zipper and said this is lunch."

reinvestigation into the incident to determine whether she had fabricated the story or the statement was merely uncorroborated. James conducted the reinvestigation.

Norwood and Silvestri again denied witnessing the incident. Norwood declared that it would have been impossible for her to miss the incident Warren described. Moreover, Norwood said that Warren had come to Norwood's house and tried to convince her that the incident had indeed taken place. Following the reinvestigation, Warren's termination was allowed to stand.

Warren complained to the EEOC about her termination. The EEOC filed suit, alleging that Warren had been fired in retaliation for complaining about supervisor sexual harassment. The EEOC specifically claims Warren was fired for participating in the employer's investigation and opposing what she believed was an unlawful employment practice.

Defendant moved for summary judgment. The district court granted Defendant's motion. The court said that the EEOC had failed to establish the first element of the prima facie case for retaliation: that Warren had engaged in statutorily protected activity. The EEOC filed a motion for reconsideration. The district court denied this motion and affirmed its earlier judgment; the district court wrote that the grant of summary judgment was also proper because the EEOC failed to show causation or pretext.

DISCUSSION

We review a district court's grant of summary judgment de novo, viewing the evidence in the light most favorable to the nonmoving party.  See Merritt v. Dillard Paper Co., 120 F.3d 1181, 1182, 1184 (11th Cir. 1997).

At the outset, we examine whether Warren's taking part in her employer's internal investigation of sexual harassment allegations constitutes protected activity at all under Title VII.  Title VII's retaliation provisions do protect certain kinds of activity.  Under the opposition clause, an employer may not retaliate against an employee because the employee "has opposed any practice made an unlawful employment practice by this subchapter."  42 U.S.C. § 2000e-3 (a).  And, under the participation clause, an employer may not retaliate against an employee because the employee "has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter."  Id.

First, the EEOC contends that Warren engaged in activity protected by the participation clause.  We cannot agree.  The participation clause covers participation in "an investigation . . . under this subchapter," that is, an investigation under subchapter VI of Chapter 21 of Title 42 (42 U.S.C. §§ 2000e - 2000e17).  42 U.S.C. § 2000e-3(a).  This clause protects proceedings and activities which occur in

5

conjunction with or after the filing of a formal charge with the EEOC; it does not include participating in an employer's internal, in-house investigation, conducted apart from a formal charge with the EEOC.[2]  See Silver v. KCA, Inc., 586 F.2d 138, 141 (9th Cir. 1978) (stating that participation means "participation in the machinery set up by Title VII to enforce its provisions").  We conclude that, because no EEOC complaint had been filed before Warren's termination, her taking part in Defendant's internal investigation did not constitute protected expression under the participation clause of Title VII.[3]

---

[2]So, at a minimum, some employee must file a charge with the EEOC (or its designated representative) or otherwise instigate proceedings under the statute for the conduct to come under the participation clause. See Booker v. Brown & Williamson Tobacco Co., 879 F.2d 1304, 1313 (6th Cir. 1989) (concluding that any protected activity by an employee prior to the instigation of statutory proceedings must come under opposition clause because instigation of statutory proceedings is prerequisite to protection under participation clause); Burns v. Republic Sav. Bank, 25 F. Supp.2d 809, 828 (N.D. Ohio 1998) ("Participation requires the actual filing of a charge . . . ."); see also Johnson v. University of Cincinnati, 215 F.3d 561, 581 (6th Cir. 2000) ("To establish a claim of retaliation under the participation clause, Plaintiff must make a prima facie case by showing that Defendants discharged him because he filed a claim with the EEOC."); Byers v. Dallas Morning News, Inc., 209 F.3d 419, 428 (5th Cir. 2000)("In the instant case, the 'participation clause' is irrelevant because Byers's [sic] did not file a charge with the EEOC until after the alleged retaliatory discharge took place.").  The parties cite no case holding an employee's taking part in an internal investigation to be protected activity under the participation clause when no EEOC charge had been filed.

[3]The EEOC asserts that -- in the light of the Supreme Court's recent decisions in Faragher v. City of Boca Raton, 118 S. Ct. 2275, 2293 (1998), and Burlington Indus., Inc. v. Ellerth, 118 S. Ct. 2257, 2270 (1998) -- the participation clause must encompass taking part in an employer's internal investigation, apart from the filing of an EEOC complaint.  According to the EEOC, these decisions essentially made reporting an incident of harassment to the employer a new prerequisite to filing a claim.  We disagree with the EEOC's use of these important decisions.  These decisions decided the proper level of vicarious liability that employers have for the acts of supervisors.  Cf. Borgo v. Goldin, 204 F.3d 251, 255 n.4 (D.C. Cir. 2000) (concluding that employee's activity came under opposition, rather than participation clause, because she complained of retaliation "not against her

Second, the EEOC argues that Warren's statement is protected under the opposition clause. But, even if her acts might otherwise have constituted protected expression under the opposition clause, the district court was correct in granting summary judgment for Defendant because the EEOC has failed to show pretext to rebut Defendant's proffered legitimate nondiscriminatory reason for terminating Warren.

The EEOC says that an employee's speech in opposition is protected -- that is, cannot be the basis for negative employment acts -- unless the employee actually lied.[4] According to the EEOC, that the employer has a good faith belief that the employee lied is insufficient to justify adverse employment action. Thus, the EEOC contends that summary judgment cannot be granted for the employer if a disputed issue of

official EEO complaints, but against [the] memorandum she wrote to her supervisor opposing discrimination she perceived from him"). We do not believe Congress intended to protect absolutely every sexual harassment complaint made to an employer -- no matter how informal or knowingly false -- as a protected activity under the participation clause. The statute's opposition clause would be rendered largely meaningless, having been engulfed by the participation clause.

This case is materially different from our decision in Clover v. Total System Servs., 176 F.3d 1346,1353 (11th Cir. 1999), in which we concluded that an employee's participation in an employer's internal investigation was protected under the participation clause when the investigation was conducted by the employer in response to receiving a notice of charge of discrimination from the EEOC (which informed the employer that evidence submitted by the employer will be considered by the EEOC in its investigation). In this case (unlike in Clover), no pertinent employee had filed a charge with the EEOC yet, nor had the employer received one from the EEOC. See Booker v. Brown & Williamson Tobacco Co., 879 F.2d 1304, 1313 (6th Cir. 1989) (concluding that statute should be read literally and stating that activity of employee before instigation of statutory proceedings comes under opposition clause, because the filing of a charge or complaint with the EEOC is a prerequisite to protection under participation clause).

[4]Of course, neither we, nor the EEOC, know for certain whether Warren lied or not.

material fact exists on the question of whether the employee had actually lied. The EEOC argues that an employer must bear the risk of Title VII liability if the employer fires an employee who did not actually lie even when the employer had good reason to believe the employee had lied. We cannot agree.

Even if false statements made in the context of an EEOC charge (per the participation clause) are protected and cannot be grounds for dismissal or discipline, see Pettway v. American Cast Iron Pipe Co., 411 F.2d 998, 1007 (5th Cir. 1969) (concluding that employee cannot be fired for anything written in EEOC charge), this extreme level of protection for untruth is not afforded to false statements made under the opposition clause. See Vasconcelos v. Meese, 907 F.2d 111, 113 (9th Cir. 1990) ("Accusations made in the context of charges before the Commission are protected by statute; charges made outside of that context are made at the accuser's peril.").

The statutory retaliation provision has two distinct components. Both offer employees some protection, but that these two components should offer two different levels of protection is consistent with plain reading and purposes of the statute.[5] The participation clause includes activity done in connection with proceedings conducted by the federal government and its agencies: an employee has invoked the jurisdiction

---

[5]See United States v. Ron Pair Enter., Inc., 109 S. Ct. 1026, 1030 (1989) (noting that a statute must be read as "mandated by [its] grammatical structure"); Kornblau v. Dade County, 86 F.3d 193, 195 (11th Cir. 1996) (stating that it is court's duty to give effect to every clause of statute).

8

of the federal government through its agency, the EEOC. And we have held that expansive protection is available for these adjudicative kinds of proceedings run by the government. See Pettway, 411 F.2d at 1007.

Opposition clause acts, however, are taken outside of the context of a government review and, instead, are taken in the context of the ordinary business environment and involve employers and employees as employers and employees. As in this case, whether to fire an employee for lying to the employer in the course of the business's conduct of an important internal investigation is basically a business decision; this decision, as with most business decisions, is not for the courts to second-guess as a kind of super-personnel department. See Damon v. Fleming Supermarkets of Fla., Inc., 196 F.3d 1354, 1361 (11th Cir. 1999) (noting that court is not concerned with whether employment decision was prudent or fair but only with whether it was motivated by unlawful discriminatory animus).

The EEOC argues that Defendant, to avoid liability under Title VII, must prove that Warren, in fact, lied. But we cannot agree that an employer must be forced to prove -- presumably in a court of law -- more than its good faith belief that a false statement was knowingly made. In the kind of investigation involved in this case, the employer is not acting pursuant to the statute or under color of law, but is conducting the company's own business.

When an employer is told of improper conduct at its workplace, the employer can lawfully ask: is the accusation true? When the resulting employer's investigation (not tied to the government) produces contradictory accounts of significant historical events, the employer can lawfully make a choice between the conflicting versions – that is, to accept one as true and to reject one as fictitious – at least, as long as the choice is an honest choice. And, at least when the circumstances give the employer good reason to believe that the fictitious version was the result of a knowingly false statement by one of its employees, the law will not protect the employee's job.

False statements impair the employer's ability to make sound judgments that may be important to the employer's legal, ethical and economic well-being. So, an employer is entitled to expect and to require truthfulness and accuracy from its employees in an internal investigation that is exploring possibly improper conduct in the business's own workplace.[6] (For example, we readily suppose an employee -- a nonharassing employee -- could be fired if the employer had reason to believe the employee was concealing harassing conduct from the employer's investigation.) And, in carrying out its business and in making business decisions (including personnel decisions), the employer can lawfully act on a level of certainty that might not be enough in a court of law. In the work-a-day world, not every personnel decision

---

[6]Courts of law are very fond of the truth and favor it on almost every occasion.

10

involving a false statement (or a cover-up) has to be treated as something like a trial for perjury. Therefore, an employer, in these situations, is entitled to rely on its good faith belief about falsity, concealment, and so forth. Cf. Damon, 196 F.3d at 1363 n. 3 ("An employer who fires an employee under the mistaken but honest impression that the employee violated a work rule is not liable for discriminatory conduct."); Sempier v. Johnson & Higgins, 45 F.3d 724, 731 (3d Cir. 1995) ("Pretext is not demonstrated by showing simply that the employer was mistaken.").

Warren could properly be discharged based on Defendant's good faith belief that she lied in an internal investigation. In other words, Defendant offered a legitimate nondiscriminatory reason for Warren's termination: Defendant concluded that she had lied in an internal investigation. See Elrod v. Sears, Roebuck & Co., 939 F.2d 1466, 1470 (11th Cir. 1991) (noting that inquiry is not whether employee was guilty of misconduct but whether employer in good faith believed employee had done wrong and whether this belief was the reason for the termination); see also O'Day v. McDonnell Douglas Helicopter Co., 79 F.3d 756, 762 n.6 (9th Cir. 1996) ("[A]n employer's discrimination does not immunize its employees from consequences of their wrongdoing.").

We allow the district court's conclusion that the EEOC has failed to show pretext. The EEOC presents no evidence that Defendant lacked a good faith belief

11

that Warren lied.  The record compels finding a good faith belief.

CONCLUSION

Because the EEOC has failed to show pretext for Warren's proffered legitimate nondiscriminatory reason for terminating her employment, the district court's grant of summary judgment for the Defendant in this case is AFFIRMED.